[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10200

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 28, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-02857-CV-TWT-1

OFS FITEL, LLC,
OFS BRIGHTWAVE, LLC,

Plaintiffs-Appellants,

versus

EPSTEIN, BECKER AND GREEN, P.C.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(November 28, 2008)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

HULL, Circuit Judge:

In this attorney negligence case, plaintiffs OFS Fitel LLC and OFS BrightWave LLC (collectively, "Fitel") appeal the district court's final judgment of dismissal, contending the district court abused its discretion in imposing discovery sanctions. Defendant Epstein, Becker & Green, P.C. ("EBG") moved to dismiss the appeal for lack of jurisdiction. After review and oral argument, we conclude that jurisdiction exists over the appeal, and we affirm in part and reverse in part the district court's sanctions order and dismissal of Fitel's claims.

## I. BACKGROUND

### A. Fitel Purchases OFS and Considers No Double Dipping Policy

In November 2001, Fitel's parent company Furukawa Electric Company, Ltd. ("Furukawa") purchased Optical Fiber Solutions ("OFS"), a division of Lucent Technologies, Inc. that supplied fiber optic cable and materials to the telecommunications industry. Furukawa formed Fitel to own and operate OFS after the purchase, and, in connection with the purchase, hired EBG, a law firm, to provide legal advice regarding compliance with American labor and employment law.

Upon consummation of the purchase, many OFS management employees became Fitel's employees. Fitel wished to provide these employees with a variety of benefits, including retirement and severance packages and paid vacation time,

which would increase based on their years of service, including their time at Lucent.  Some of these employees were already eligible for full retirement benefits from Lucent; these employees generally were older than those who were not yet full-retirement-eligible.  Fitel's management preferred not to permit these employees to "double dip" by taking full retirement benefits from Lucent while also having their years of Lucent service increase their benefits from Fitel.

Thus, Fitel adopted a policy giving non-retirement-eligible employees at Fitel full credit for their years of service at Lucent, while treating retirement-eligible employees as newly hired for purposes of calculating their benefits at Fitel.  According to Fitel, EBG attorneys researched whether Fitel's proposed "no double dipping" policy might violate the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., but never warned Fitel that the policy could subject Fitel to viable or potentially viable claims or lawsuits under the ADEA.

B.    ADEA Claims Against Fitel

During the two years after its OFS purchase, Fitel engaged in a series of layoffs of OFS/Fitel employees.  Beginning in July 2003, Fitel received demand letters from several laid-off former OFS/Fitel employees contending that Fitel's less favorable treatment of older workers constituted actionable age discrimination under the ADEA.  Fitel retained independent counsel, investigated the claims, and

3

determined the claims had merit. Fitel settled the ADEA claims at a cost of $1.9 million in payments to the employees and approximately $450,000 in legal fees.

## C.    Fitel Sues EBG

In October 2005, Fitel sued EBG in state court, asserting claims for legal malpractice, breach of fiduciary duty, unjust enrichment, attorney's fees, and punitive damages. The crux of each claim was that EBG, in failing to warn Fitel of the "no double dipping" policy's potential non-compliance with the ADEA, had rendered deficient legal advice and failed to meet the standard of care imposed by the attorney-client relationship. EBG thereby committed malpractice, breached its fiduciary duty, and was unjustly enriched. EBG's professional negligence was a core element of each claim. As Georgia law requires in professional negligence actions, Fitel attached to its complaint an expert's affidavit identifying the defendant's allegedly negligent acts and the factual bases for the charge of negligence. Fitel's expert was Atlanta attorney Nancy Rafuse. Fitel's complaint sought to recover not only the ADEA settlement money and the fees paid to EBG but also Fitel's attorney's fees incurred in bringing the instant action.

EBG removed the case to federal district court because diversity jurisdiction existed. The district court set the close of discovery for August 13, 2006.

4

EBG served upon Fitel a request for production of "all documents reflecting [Fitel's] fee agreement or other agreements with the attorneys or law firms representing [Fitel] in this Action; all invoices [Fitel] received from such attorneys or law firms and all . . . other documents reflecting payment made to such attorneys" (the "Document Request").  Fitel's response objected on privilege, work product immunity, and relevance grounds but, subject to those objections, agreed to "produce documents responsive to [the Document Request] that reflect the amounts of attorneys fees billed to and paid by [Fitel] in connection with this action (redacted, if necessary, to protect privileged information)."

A dispute arose over what documents Fitel would produce and when production would occur.  Fitel indicated that it would produce a summary of its counsel's bills, while EBG insisted on the actual bills.  Fitel reiterated to EBG its position that a summary was sufficient and stated that it would provide the summary as soon as EBG "confirm[ed] that if we provide the [summary], EBG will not contend that [Fitel's] response is insufficient."  Because EBG never agreed that a summary was enough, Fitel never produced it.  Fitel never produced the actual bills or a fee agreement either.

Another dispute arose over Rafuse's written expert report due under Federal Rule of Civil Procedure 26.  As stated above, Fitel identified Rafuse as its expert

5

on the legal standard of care and attached her expert affidavit to its complaint.

Fitel confirmed its designation of Rafuse as its expert witness in its post-removal

initial disclosures. On May 18, 2006, Fitel noticed for late June the depositions of

four EBG attorneys living in New York.[1] On June 12, 2006, Fitel wrote EBG in

an attempt to schedule these depositions by agreement. Fitel's letter informed

EBG that Rafuse's expert report would "take into account the deposition

testimony" of those EBG attorneys and that "[w]e believe her report can be

completed within thirty (30) days of the completion of these four depositions."

Throughout this case, Fitel consistently has contended it needed information from

the EBG attorneys about what they did in representing Fitel in order for Rafuse to

complete her report. As noted later, Rule 26(a)(2)(B) requires that an expert's

written report contain not only a statement of her opinions but also, among other

things, the "data or other information considered by the witness in forming the

opinions."[2]

---

[1]All four were EBG attorneys when EBG represented Fitel, but one later left EBG.

[2]In this opinion we quote the rules as they read when the district court issued its rulings in 2006. Effective December 1, 2007, however, the Federal Rules of Civil Procedure were amended "to effect a 'general restyling . . . to make them more easily understood and to make style and terminology consistent." Mills v. Foremost Ins. Co., 511 F.3d 1300, 1308 n.11 (11th Cir. 2008) (quoting Fed. R. Civ. P. 1, Advisory Comm. note on 2007 Amendment). "Except for a very small number of minor technical amendments," none of which is relevant here, "the amendments were intended to make no changes in substantive meaning." Id. (quotation marks and citation omitted).

On June 14, 2006, EBG filed a motion and brief for extension of discovery from August 13, 2006 until December 13, 2006. EBG's brief argued the discovery extension was needed for several reasons, including that Fitel's expert report would not be prepared until EBG attorneys were deposed and then EBG needed time to depose that expert:

> On June 12, 2006, counsel for Plaintiffs informed counsel for defendant that no expert report will be prepared by said expert until approximately thirty days after Plaintiff[s] depose[] certain attorneys employed by EBG (which depositions were originally noticed by Plaintiffs for the week of June 26, 2006 and which are currently the subject of discussion between counsel). Even if those depositions were taken on the dates originally noticed by Plaintiffs, said expert report would not be supplied before August of 2006, with the present discovery deadline being August 13, 2006. Once such an expert report is furnished to it, Defendant will want to depose said expert and evaluate the necessity of identifying an expert to testify in response thereto.

(Citation omitted). Thus, EBG acknowledged it was aware Fitel needed the EBG attorneys' depositions before Fitel would be producing its expert's written report. Shortly thereafter, the parties submitted a consent order, which the district court signed, extending the discovery period until October 31, 2006. The depositions of the EBG attorneys did not take place in June 2006 as originally noticed, and two of the four were delayed until September 2006 for the convenience of the attorneys. After EBG informed Fitel that one of the EBG attorneys' depositions

could not be scheduled until September 14, Fitel sent a letter to EBG reminding

EBG that it needed the deposition to finalize Rafuse's expert report:

> [W]e remind you that we will need approximately thirty (30) days after the completion of the EBG lawyer depositions to finalize our expert report. If these gentlemen cannot find any earlier opening in their schedules, you should not expect our expert report until mid-October.

The last of the four EBG attorneys was deposed on September 27, 2006, and

Fitel's counsel obtained the transcript from the court reporter on October 16, 2006.

Fitel produced Rafuse's written report on November 3, 2006, which was eighteen

days after receiving the last deposition transcript but three days after the close of

discovery on October 31, 2006.

**D.    Discovery Motions, Hearing, and Sanctions Rulings**

In late October 2006, EBG filed a series of discovery-related motions.

Specifically, EBG moved the district court to, among other things: (1) exclude

Fitel's claim for attorney's fees because of its failure to produce the bills from its

current legal counsel; and (2) exclude the testimony of Rafuse and any other

expert witness that Fitel might designate because of Fitel's failure to timely

produce the Rule 26(a)(2) written expert report. The district court heard argument

on EBG's motions on December 15, 2006.[3]

---

[3] At the hearing, Fitel was represented by Jeffrey O. Bramlett of Bondurant, Mixson & Elmore LLP, and EBG was represented by Robert B. Wedge of Shapiro, Fussell, Wedge &

8

EBG first presented its motion to strike Fitel's claim for attorney's fees. Fitel argued that Georgia law did not require it to disclose its ongoing attorney's bills on a regular basis. The court was not persuaded, stating "[i]f there was a personal injury case and your client was having ongoing medical bills would you say, well, I'm not going to give you any of the medical expenses because they're ongoing? I mean, what's the difference?" Fitel replied that providing its bills would require it to disclose "essentially, a blueprint of what the lawyers are doing and who they're talking to and their work product." The court responded that "you would have the right to redact from your bills that sort of information . . . . But to say we're demanding attorney's fees as part of our damages, and we refuse to give you the bills that document what those fees are . . . I'm just mystified by that argument."

Fitel then argued it had offered to produce a summary of its bills, but EBG rejected this offer and failed to bring this dispute to the court's attention before the close of discovery. After hearing EBG's rebuttal, the court dismissed with prejudice Fitel's claim for attorney fees, finding a complete, willful failure by Fitel to provide its attorney's fee documents:

---

Martin, LLP.

[I]t appears, to me, that there's been just a complete and willful failure to provide the defendants with discovery to which they're entitled. And I'm going to grant the defendant's motion to exclude the plaintiff's claim for attorney's fees under the authority of Rule 37(d) and 37(b)(2)(C). It's not–not appropriate to simply refuse to produce documents that are clearly relevant to a claim then say, well, you accept something less than that and I'll give it to you and then, if you don't accept it, to say, well, we're going to make the judge order us to do it. And if the judge then orders us to do it, well, we'll do it. That's just not the way cases are handled in my court, and it's not the way I'm going to permit cases to be handled in my court. So I grant the motion and dismiss, with prejudice, the plaintiff's claim for attorney's fees.

The court next heard argument on EBG's motion to exclude Fitel's legal expert. Fitel argued that Rafuse's expert affidavit, filed with the complaint, complied with Rule 26(a)(2) because the affidavit contained a summary of Rafuse's opinions and the legal conclusions underpinning them, and thus enabled EBG to depose Rafuse during the discovery period. Fitel also pointed out that the delay in producing a formal expert report was caused by EBG's failure to make its EBG attorney witnesses in New York available for depositions earlier in the discovery period. Without their testimony, Fitel claimed, Rafuse could not produce a report any more comprehensive than her affidavit.

Finally, Fitel offered, in lieu of sanctions, to make Rafuse available for deposition by EBG at its request. Specifically, Fitel's counsel stated, "[B]ecause it is a case dispositive issue, we would ask that the court permit the report to be

filled [sic] out of [time] and permit the defendant to take a deposition if the defendant wants to do that." In response, EBG's counsel reiterated that Rafuse's affidavit did not provide sufficient notice of her opinions to excuse non-production of the Rule 26(a)(2) written report, that Rule 26 and Local Rule 26.2(C) require the report to be produced early enough to permit expert depositions to be taken before the discovery period closes, and that "a failure to provide information [required by Rule 26(a)(2)] is, by itself, sufficient to warrant sanctions, including [exclusion] of the expert's testimony."

After hearing argument, the court granted EBG's motion to exclude Fitel's legal expert, reasoning:

> Again there, was just a complete failure to comply with the rules and it's not acceptable, to me, for a party to say, well, we didn't comply with the rule because we thought it would be more efficient or better practice to do it our way, rather than the way the rule says you're supposed to do it. It's also not acceptable to me for a party to fail to provide discovery and then say, well, judge, if you decide we did wrong in not complying with the rules, well, we'll do it now. That completely disrupts the orderly disposition of a case like this. For example, if I accepted Mr. Bramlett's suggestion that, well, we'll make the expert available to be deposed, that means discovery's got to be reopened for that deposition. Then Mr. Wedge has got to hire his expert, and the plaintiff has got to depose his expert. And finally, I regret to say, and say after only very careful consideration that, frankly, this appears, to me, to be part of a pattern by the plaintiffs, of stonewalling and delaying discovery. And, for those reasons, I feel that it is my duty to enforce the local rule that says that, if you don't comply, you don't designate your experts sufficiently early in the discovery period, you don't provide the report that allows the

11

other side to take their deposition, the sanction is exclusion. And that's why I'm granting the motion.

The court asked EBG's counsel to proceed with his next motion. Fitel's counsel then pointed out that the court's exclusion of Fitel's legal expert was case-dispositive and there was nothing left in the case, stating:

> Your Honor, if I may, the court's ruling on that motion is, in fact, case dispositive. Under the law if the plaintiff is unable to offer expert testimony on the issue of professional negligence, there is no case left. So if the court wants to proceed with these other motions, that is certainly the court's prerogative. But my suggestion is, in light of the court's ruling, we cannot proceed in this case. And so my thought is–and if you want to hear these other motions, that's fine. But we've got to decide whether we–this case is going nowhere, based on that ruling; therefore, we'll have to decide whether we need to appeal that or not or dismiss or whatever we're going to do. Frankly, if the court wants to pursue these other motions, that's fine. But there's nothing left of this case in light of that last ruling, and the court could save everybody a lot of time and money by, simply, moving forward.

The court asked for comment by EBG's counsel, who replied:

> My only concern, your honor, is . . . I think that the motion we haven't heard yet [the fifth motion, regarding Fitel's alleged "willful failure to engage in discovery"] is, perhaps, the most illustrative of the stonewalling and the failure to make discovery of anything that we've seen so far today. We got 16,000 electronic documents dumped on us starting four days before the discovery period ended . . . . Now in our motion for sanctions, one of our prayers for relief we made was dismissal of the complaint based on that conduct. And the only concern I have, at this juncture, is if the plaintiff appeals the ruling of the court with respect to the expert affidavit . . . the record would not have, in it, another potential ground for upholding that decision. And I guess the–I guess the net effect of all of that would be that, if the plaintiff were

12

successful in an appeal on that ruling, I suppose we could address these remaining motions at that time. There are a lot of messy issues in these remaining motions. . . . So perhaps, the best course, at this time, would be for us to reserve our rights, with respect to our other outstanding motions, rather than subjecting the court and everybody else to [hearing that motion]. . . . I would, simply, want to be able to preserve our rights with respect to those motions, your honor.

The court asked Fitel's counsel: "Do you want to respond in terms of the other motions for sanctions?" He replied:

Well . . . in suggesting . . . the case dispositive nature of the last ruling by the court, I offered the proposition that the case should terminate, at this point, based on efficiency. I have no problem with putting something in the order that preserves Mr. Wedge's rights to reassert these motions if you, at any point, feel it's necessary to do that. . . . [B]ut we're talking about a case that is dead at this point, based on the last ruling, it seems to me. There are other things to do.

The court then stated:

Well, Mr. Bramlett, I can't tell you how painful it has been for me to do what I did and how painful it was going to be for me and you to go through these next few motions. I appreciate your suggestion. I think it's appropriate. And, based upon the stipulation by the plaintiff that the exclusion of its expert is a case dispositive event, this action is dismissed.

On January 5, 2007, the court entered an order of dismissal, which stated, among other things, that:

After the Court announced its rulings on the two [motions for sanctions], counsel for Plaintiffs . . . suggested that, in lieu of proceeding with the remaining pending discovery motions, the Court simply proceed to dismiss the case. Defense counsel did not object and the Court found

13

this suggestion appropriate. Accordingly, based on [Plaintiff's] stipulation that the Court's ruling on [the expert motion] is "case dispositive," the Court dismissed the case with prejudice.

**E.     Appeal and Motion to Dismiss**

Fitel timely appealed the district court's judgment of dismissal, arguing that the court abused its discretion in imposing the discovery sanctions. EBG then moved this Court to dismiss Fitel's appeal for lack of jurisdiction. We carried EBG's motion with the case and held oral argument.

## II. JURISDICTION

We first consider our jurisdiction. See Taylor v. Appleton, 30 F.3d 1365, 1366 (11th Cir. 1994) ("[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues."); Parklane Hosiery Co. v. Parklane/Atlanta Venture (In re Parklane/Atlanta Joint Venture), 927 F.2d 532, 534 (11th Cir. 1991) ("Before reaching the principal issue raised in this appeal, this Court must first determine whether it has jurisdiction."). Fitel submits this Court has jurisdiction over its appeal under 28 U.S.C. § 1291 and pursuant to United States v. Procter & Gamble Co., 356 U.S. 677, 78 S. Ct. 983 (1958). EBG contends we lack jurisdiction, citing Druhan v. American Mutual Life, 166 F.3d 1324 (11th Cir. 1999) and Woodard v. STP Corp., 170 F.3d 1043 (11th Cir. 1999). After review, we conclude appellate jurisdiction exists under 28

U.S.C. § 1291 and the Constitution. The parties are correct that <u>Procter &</u> <u>Gamble</u>, <u>Druhan</u>, and <u>Woodard</u> are relevant to our inquiry. Consequently, we discuss and then apply these precedents.

## A. Precedents

### 1. United States v. Procter & Gamble Co.

In <u>United States v. Procter & Gamble Co.</u>, the government filed a civil antitrust lawsuit following a grand jury investigation in which no indictment was returned. 356 U.S. at 678, 78 S. Ct. at 984. Because the government was using the grand jury transcript to prepare for the civil trial, the defendants sought access to the transcript as well. <u>Id.</u> The government refused, but the district court ordered production. <u>Id.</u> at 679, 78 S. Ct. at 985. The government, "adamant in its refusal to obey," moved the district court to either (1) stay its order pending the filing of an appeal and an application for an extraordinary writ, or (2) amend its order to state that if the government failed to produce the transcript, the district court would dismiss the complaint. <u>Id.</u> The district court granted the government its latter option and amended its order to provide for dismissal if the grand jury transcript was not produced. <u>Id.</u> The government refused to produce the transcript, and the district court dismissed the case. <u>Id.</u> at 679-80, 78 S. Ct. at 985.

The government appealed, and the Supreme Court confronted "the question of jurisdiction." Id. at 680, 78 S. Ct. at 985. The Supreme Court first noted that the dismissal order was a final order that ended the case. Id. The Supreme Court then acknowledged "the familiar rule"–invoked by the defendants in arguing that jurisdiction was lacking–that a plaintiff who has voluntarily dismissed his complaint may not appeal. Id. However, the Supreme Court concluded that "[t]he rule has no application here," because the government had "at all times opposed the production orders" and invited the dismissal sanction as a "way of getting review of the adverse ruling." Id. In that regard, the Supreme Court held that when the government "proposed dismissal for failure to obey, it had lost on the merits and was only seeking an expeditious review." Id. at 680-81, 78 S. Ct. at 985. In other words, "'[t]he plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they might come to this court without further delay.'" Id. at 681, 78 S. Ct. at 986 (quoting Thomsen v. Cayser, 243 U.S. 66, 83, 37 S. Ct. 353, 358, 61 L. Ed. 597 (1917)). Thus, the Supreme Court had jurisdiction to decide the merits of the appeal.

    2.    Druhan v. American Mutual Life

After Procter & Gamble, this Court heard two cases where (1) the district court denied a plaintiff's motion to remand its case to state court; (2) the plaintiff then filed a written motion to dismiss; and (3) the district court granted the motion and dismissed the case with prejudice. In both remand cases, this Court concluded the plaintiff was not adverse to the final judgment, and thus jurisdiction did not exist.

Specifically, in Druhan v. American Mutual Life, this Court addressed the question of whether an appeal from a final judgment, which resulted from a voluntary dismissal with prejudice after the plaintiff lost a motion to remand to state court, is within this Court's jurisdiction. 166 F.3d at 1325. The plaintiff Druhan sued the defendant insurance company in state court, alleging the defendant fraudulently induced her to purchase one of its policies. Id. at 1324. Because Druhan purchased the policy in connection with her employer's benefit package, the defendant believed Druhan's claims were preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and removed the case to federal court. Id. at 1324-25. Druhan moved the district court to remand the case to state court, arguing that ERISA did not preempt her claims. Id. at 1325. The district court agreed with the defendant and denied Druhan's remand motion. Id.

Druhan then filed a written "Request and Stipulation for Entry of Final Judgment" (the "Judgment Request"). Id. at 1325 & n.3. Because it was not signed by the defendant, this Court characterized the Judgment Request as "a motion to dismiss under Rule 41(a)(2) of the Federal Rules of Civil Procedure." Id. at 1325 n.3. In her Judgment Request, Druhan "stated that she had no claims under ERISA and thus the [district] court's order denying her motion to remand effectively left her without a remedy." Id. at 1325. Although the district court granted Druhan's request by dismissing the action with prejudice,[4] the Druhan majority opinion does not state that the district court ever approved or agreed with Druhan's assertion that she had no claim under ERISA. Indeed, Judge Barkett's concurrence points out the district court's remand order was not case-dispositive. See Druhan, 166 F.3d at 1327 (Barkett, J., concurring) ("The district court's denial of Druhan's motion to remand . . . did not have the effect of dismissing her action. Druhan still had the ability to make her claim under ERISA."); see also id. at 1326 (majority opinion) (stating that "plaintiff believes [the remand order] effectively disposed of her case," but not stating that the district court ever agreed).

_____

[4]Druhan's Judgment Request apparently did not specify whether she sought a dismissal with or without prejudice; this Court presumed the dismissal with prejudice conformed to Druhan's wishes because she never argued otherwise on appeal. See id. at 1325 n.3.

18

Druhan appealed, arguing that the district court erred in denying the remand motion because ERISA did not preempt Druhan's state law claims. Because Druhan affirmatively invited the final judgment entered against her, this Court confronted a jurisdictional issue–specifically, "whether an appeal from a final judgment that resulted from a voluntary dismissal with prejudice is within this court's jurisdiction." Id. at 1325.

Although the judgment was with prejudice and indisputably final, the Druhan Court determined that it lacked jurisdiction because there was no "case or controversy." Id. at 1326.[5] The Druhan Court pointed out that Article III of the United States Constitution limits federal court jurisdiction to "Cases" and "Controversies," and "[a]t the heart of the case or controversy requirement is the presence of adverse parties." Id. The Court concluded that because the final judgment was entered in response to the plaintiff's motion for a dismissal with prejudice, and because neither party was contending the district court entered that judgment in error, "[t]here is therefore no adverseness as to the final judgment, and thus no case or controversy." Id. (emphasis added).

_____

[5]The Druhan Court concluded that Procter & Gamble did not control; that case, the Druhan Court found, was "very different" because it did not involve "an affirmative request by the plaintiff that the case be dismissed with prejudice" but merely an attempt by the plaintiff "to influence the court's discretion in determining the appropriate sanction for discovery violations." Id. at 1325 n.4.

19

Additionally, the Druhan Court looked beyond the form of the appeal to the substance and concluded that it was "not an appeal from a final judgment, but an appeal from an interlocutory order denying the plaintiff's motion to remand." Id. The Druhan Court determined that such an appeal from an interlocutory order is "not statutorily authorized" because the "district court's order denying remand is not among the orders from which an appeal lies as a matter of right, and the plaintiff did not seek an appeal by certification" pursuant to 28 U.S.C. § 1292(b). Id. Although recognizing that there may be good policy reasons to allow the appeal to proceed, the Court concluded, "[t]hat, however, is a decision that rests in the hands of Congress, which, along with the Constitution, sets the boundaries of this court's jurisdiction." Id.

3.    Woodard v. STP Corp.

Shortly after Druhan, this Court confronted a similar issue in Woodard v. STP Corp., 170 F.3d at 1043. Like Druhan, Woodard involved an appeal from an invited final judgment after the denial of the plaintiff's motion to remand a case to state court. Also like Druhan, Woodard did not involve an order that was case-dispositive.

Specifically, the Woodard plaintiff brought a class action in state court. Id. at 1044. After a grant of conditional class certification, the defendants removed

20

the case to federal court based on diversity jurisdiction.  Id.  The plaintiff moved to remand the case to state court.  Id.  The district court denied the motion and vacated the state court's conditional class certification.  Id.  The plaintiff then filed a motion for voluntary dismissal, which the defendants opposed.  Id.  The district court granted the plaintiff's motion and dismissed the case with prejudice.  Id.  The plaintiff appealed, challenging, among other things, the district court's denial of remand.  Id.

This Court noted that the plaintiff did not obtain § 1292(b) certification and thus could not appeal directly from the order denying remand.  Id.  Although the plaintiff obtained a final judgment when the court granted with prejudice his motion for voluntary dismissal, the Woodard Court concluded the judgment was not appealable because "it was obtained at the request of the plaintiff and there is therefore no 'case or controversy' in regard to it."  Id. (citing Druhan, 166 F.3d at 1326).  This Court dismissed the appeal of the remand denial for lack of jurisdiction.  Id. at 1044-45.

**B.    Jurisdictional Analysis**

In light of these precedents, it is clear that for this Court to exercise jurisdiction over an appeal, our jurisdiction must be both (1) authorized by statute and (2) within constitutional limits.  Druhan, 166 F.3d at 1326.  As to the first

21

prong, Congress authorized by statute appeals from final judgments. See 28

U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from

all final decisions of the district courts . . . except where a direct review may be

had in the Supreme Court.").

Fitel's appeal satisfies the requirement of being authorized by statute

because it is an appeal of a final judgment of dismissal with prejudice. See

District Court Order of Jan. 5, 2007 (the "Dismissal Order"), at 4 ("this action is

hereby dismissed with prejudice"). If Fitel loses this appeal, the case is over. Fitel

cannot re-file because the district court's dismissal was with prejudice.[6] See

McMahon v. Presidential Airways, Inc., 502 F.3d 1331, 1338 (11th Cir. 2007)

(stating that an order is final and appealable when it "ends the litigation on the

merits and leaves nothing more for the court to do but execute the judgment").[7]

Because Fitel appeals a final judgment, jurisdiction exists under § 1291 regardless

_____

[6]In contrast, "[w]e have held that we do not have jurisdiction to hear appeals from
voluntary dismissals without prejudice, because they leave the plaintiff free to bring the case
again and therefore are not 'final' decisions for purposes of appellate jurisdiction under 28
U.S.C. § 1291." Druhan, 166 F.3d at 1325 n.4. The Druhan Court pointed out, though, that the
line of cases concerning dismissals without prejudice is "distinguishable from the case at hand
[because] the appellant in this case is not free to bring the case again, and thus the judgment
entered by the district court was truly 'final.'" Id.

[7]See also Carpenter v. Mohawk Indus., Inc., 541 F.3d 1048, 1052 (11th Cir. 2008)
(stating that a final decision for the purpose of obtaining appellate jurisdiction under § 1291 "is
one that 'ends the litigation on the merits and leaves nothing more for the court to do but execute
the judgment'" (quoting McMahon, 502 F.3d at 1338)).

22

of whether the substance of Fitel's appeal concerns an interlocutory order.  See

Myers v. Sullivan, 916 F.2d 659, 673 (11th Cir. 1990) ("Under general legal

principles, earlier interlocutory orders merge into the final judgment, and a party

may appeal the latter to assert error in the earlier interlocutory order."); Barfield v.

Brierton, 883 F.2d 923, 931 (11th Cir. 1989) (holding that "review of the final

judgment opens for consideration the prior interlocutory orders").  Thus, Fitel's

appeal of the district court's final dismissal with prejudice is expressly authorized

by § 1291.

The only question is whether there is sufficient adverseness as to that final

dismissal to satisfy the case or controversy requirement of the Constitution.

Where a party appeals through § 1291 (the final-judgment appeal statute), she

must be adverse "as to the final judgment."  See Druhan, 166 F.3d at 1326.  EBG

argues that the adverseness question is controlled by this Court's precedent in

Druhan and Woodard and that Fitel is thus not adverse to the district court's final

judgment.  We disagree.

This Court addressed the adverseness question in Druhan and Woodard only

in the context of the appeal of a denial of a motion to remand, not an interlocutory

ruling that was effectively case-dispositive.  In both Druhan and Woodard, this

Court found that sufficient adverseness is not present when a plaintiff loses a

23

contested interlocutory ruling on a motion to remand and then voluntarily files a written request that a final judgment be entered with prejudice. In such cases, the contested remand denial affects only the forum in which the plaintiff must litigate, and the dismissal on the merits derives only from the plaintiff's own written request. Thus, when a plaintiff after denial of a motion to remand requests a dismissal with prejudice, there is no contested court ruling, either interlocutory or final, as to the merits of the plaintiff's claims.

Consequently, in the factual circumstances of <u>Druhan</u> and <u>Woodard</u>, the plaintiff is adverse to the remand order but not adverse as to the final judgment on the merits, and thus no case or controversy exists. See <u>Woodard</u>, 170 F.3d at 1044 (stating that there was no case or controversy as to the final judgment because the plaintiff requested it after remand was denied, and implying that both the district court and the defendants anticipated that the plaintiff and/or his counsel intended to re-file the claims elsewhere); <u>Druhan</u>, 166 F.3d at 1326 (stating that "the required adverseness is lacking" as to the final judgment that "the plaintiff specifically requested"); <u>see also</u> <u>Druhan</u>, 166 F.3d at 1327 (Barkett, J., concurring) ("Druhan still had the ability to make her claim under ERISA.").

But <u>Druhan</u> and <u>Woodard</u> are not directly on point here because the present case contains distinct factual ingredients that are critical to the adverseness issue.

24

First, the contested interlocutory orders at issue are materially different. Unlike the remand orders at issue in Druhan and Woodard that concerned only the forum where the cases would be heard, the sanctions order here excluding plaintiff's legal expert was case-dispositive because it foreclosed Fitel from presenting the expert testimony required to prove professional negligence, which was a core element in all of its claims. See Howard v. Walker, 249 S.E.2d 45, 46 (Ga. 1978) (holding that in legal malpractice actions, "for the plaintiff to recover he must produce opinion testimony of an expert witness"); Schluter v. Perrie, Buker, Stagg & Jones, P.C., 498 S.E.2d 543, 545 (Ga. App. 1998) ("The law presumes that lawyers perform legal services in an ordinarily skillful manner. This presumption remains with the attorney until the presumption is rebutted by expert legal testimony; otherwise the grant of a summary judgment in favor of the attorney is proper." (quotation marks and footnotes omitted)).[8]

_____

[8]In the district court, EBG's counsel did not disagree with or object to Fitel's counsel's characterization of the district court's sanctions ruling as case-dispositive. On appeal, EBG now argues the district court's exclusion of Fitel's expert was not, in fact, case-dispositive because the expert's testimony addressed only Fitel's attorney malpractice claim and not its claims for breach of fiduciary duty, unjust enrichment, attorney's fees, or punitive damages. That argument lacks merit. As Fitel's complaint makes clear, the crux of its unjust enrichment and breach of fiduciary duty claims is EBG's failure to meet the standard of care imposed by the attorney-client relationship. Both the breach of fiduciary duty and unjust enrichment counts incorporate the allegations of legal malpractice without adding any independent factual allegations, and the latter count expressly alleges that EBG was unjustly enriched by receiving compensation for "defective, unskillful, and harmful legal advice." And under Georgia law, neither an O.C.G.A. § 13-6-11 attorney's fee claim nor an O.C.G.A. § 51-12-5.1 punitive damages claim can survive without an award of relief on an underlying claim. Morris v. Pugmire Lincoln Mercury, Inc., 641

25

Second, this case involves an attorney who candidly informed the district court of the impact of its sanctions ruling on the plaintiff's case. Fitel's counsel advised the district court that its interlocutory sanctions ruling was case-dispositive and that the court should terminate the case at that point for efficiency purposes rather than proceed with the other pending motions. The dissent treats Fitel's counsel's suggestion as only a voluntary consent to a judgment against Fitel. However, the more accurate and fairer reading of Fitel's counsel's statements, both literally and in context of the record as a whole, is not that Fitel was consenting to an adverse judgment against it but only stating that, since the court had excluded its required expert, the court should expedite the case and put the ruling in final form because that ruling was undisputedly case-dispositive.

Third, and importantly, the district court here agreed with Fitel's counsel's suggestion that the sanctions ruling was case-dispositive. The district court stated that the nature of the sanctions ruling made the case "dead at this point." In regard to Fitel's counsel's statement that the case should terminate for efficiency, the district court responded, "I appreciate your suggestion. I think it's appropriate."[9]

S.E.2d 222, 225 (Ga. App. 2007). Thus, Fitel's claims, as pled, all required proof of attorney malpractice, and the interlocutory ruling, as all agreed in the district court, was case-dispositive.

[9]Also, during argument on the expert report sanctions motion and before the district court issued its ruling, the court said to Fitel's counsel, "That's why I find it so hard to believe . . . that you just did nothing, subjecting yourself to, potentially, having the whole case go away because

26

And because Fitel was willing to stipulate to the fact that the court's expert sanctions ruling was case-dispositive, this allowed the court to act immediately rather than proceeding with other motions. The court itself then stated, "And, based upon the stipulation by the plaintiff that the exclusion of its expert is a case dispositive event, this action is dismissed." The basis of the district court's dismissal was thus the undisputed case-dispositive nature of its contested interlocutory sanctions order. And by basing its dismissal on that case-dispositive event, the district court effectively made that contested interlocutory expert exclusion order a final order.

Because of these important factual distinctions, this Court's precedent in <u>Druhan</u> and <u>Woodard</u> is not directly on point here as to the adverseness question. Instead, this case is factually closer to, and thus controlled by, the Supreme Court's decision in <u>Procter & Gamble</u>. As in <u>Procter & Gamble</u>, Fitel had lost on the merits of the contested exclusion of its expert and the district court's final order merely allowed Fitel to seek an expeditious review of that ruling. <u>See</u> <u>Procter & Gamble</u>, 356 U.S. at 680-81, 78 S. Ct. at 985 (acknowledging rule that a plaintiff who seeks voluntary dismissal may not appeal but concluding that rule is inapplicable when the plaintiff opposed an interlocutory production order and

you simply failed to file the report the rule says you've got to file."

27

invited dismissal after "it had lost on the merits" and only as a way of "seeking an expeditious review"). Because the interlocutory sanctions order was case-dispositive and Fitel opposed that interlocutory order on the merits, Fitel stands adverse to the resulting final judgment that was expressly based on the undisputed case-dispositive nature of the contested interlocutory ruling. Accordingly, because Fitel's appeal satisfies both the statutory requirement of a final judgment and the Constitutional requirement of parties that are adverse to the final judgment, we have jurisdiction to hear Fitel's appeal.

Lastly, we pause to address the dissent's concerns. Our dissenting colleague suggests Fitel should have simply asked the district court to certify the appealability of the expert exclusion order under 28 U.S.C. § 1292(b). Such reasoning has fatal flaws.

First, the district court entered a <u>final</u> judgment, making the § 1291 route directly applicable. There is no requirement that a party travel the § 1292 route before filing a § 1291 appeal from a final judgment. Rather, the only question here is whether the requisite adverseness as to that final judgment exists to satisfy the Constitution, and it does.

Second, § 1292(b) certification is wholly discretionary with both the district court and this Court.[10] Furthermore, § 1292(b) sets a high threshold for certification to prevent piecemeal appeals. Indeed, to obtain § 1292(b) certification, the litigant must show not only that an immediate appeal will advance the termination of the litigation but also that the appeal involves "a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Most interlocutory orders do not meet this test.[11] Although the district court's order excluding Fitel's expert was case-dispositive, it was nonetheless a discovery sanctions order where the chances of § 1292(b) review are slim.[12]

Third, the dissent advocates looking beyond the form of the final dismissal with prejudice to the substance of the underlying issue raised on appeal. However, as discussed above, our precedent establishes that when the appeal is from a final

---

[10]See Jenkins v. BellSouth Corp., 491 F.3d 1288, 1291 (11th Cir. 2007) ("Under section 1292(b), both the district court and the court of appeals exercise discretion about granting interlocutory review . . . .").

[11]In addition, to accept the dissent would mean interlocutory orders that are case-dispositive but rest on the application of settled law are unreviewable.

[12]The dissent attempts to avoid Procter & Gamble by noting § 1292(b) was not enacted at the time of that Supreme Court decision. However, in Procter & Gamble and this case, there was in fact a final judgment entered that ended the case, making § 1292(b) inapplicable in any event. The jurisdictional question in Procter & Gamble, which is directly relevant here, was whether the plaintiff's inviting that final judgment, after losing the discovery issue on the merits, precluded jurisdiction over that final judgment.

29

judgment, the fact that the appeal substantively concerns an interlocutory ruling is no bar to jurisdiction. See, e.g., Myers, 916 F.2d at 673 (stating that "earlier interlocutory orders merge into the final judgment, and a party may appeal the latter to assert error in the earlier interlocutory order").

Fourth, and more troubling, the dissent's approach foists upon litigants and counsel an untenable position that is not required by § 1291 nor § 1292 nor the Constitution. Under the dissent's approach, an attorney dare not candidly tell the court that its ruling is case-dispositive and that it, for efficiency reasons, should consider terminating a case with prejudice due to the case-dispositive nature of the interlocutory order because any subsequent attempt to appeal would be insufficiently adverse and there would be no jurisdiction. The dissent suggests the attorney instead should move for a § 1292(b) certification and, if that fails, proceed to a Rule 12(b)(6) or summary judgment determination. Thus, under the dissent's approach, an attorney in Fitel's counsel's position faces an ethical dilemma. He can either (1) fulfill his duty of candor and ethical responsibility to the court by forthrightly informing the court that its ruling was case-dispositive and a final dismissal with prejudice is thus appropriate for efficiency purposes, thereby surrendering Fitel's right to appeal the court's order, or (2) continue to litigate to finality a case he knows has no legitimate basis for proceeding without

30

an expert witness, just so Fitel ultimately can challenge the court's case-dispositive interlocutory order excluding the expert.

On the other hand, if we recognize that adverseness as to the final judgment (i.e., the dismissal with prejudice here) is preserved when the contested interlocutory order is case-dispositive and the district court bases its dismissal with prejudice on the fact that its interlocutory decision disposed of the entire case, and the plaintiff consistently has opposed the order underlying the final dismissal, we prevent such a dilemma and also harmonize Druhan and Woodard with Procter & Gamble.[13]  Furthermore, this approach is consistent with the fundamental appellate jurisdiction principles of judicial efficiency and avoiding piecemeal appeals highlighted by the dissent.  It avoids the waste of a party going through a dismissal or summary judgment procedure that it already knows it will lose simply to get a final judgment.  And because this approach rests on the facts that the district court's interlocutory ruling was case-dispositive and the final judgment was with prejudice, an appeal of such an interlocutory order is no more

---

[13]The dissent also states that Congress, in enacting § 1292(b), "required that the district judge determine the dispositive effect of the order it has entered.  This makes perfect sense." However, its discussion conflates § 1292(b)'s standard for certification (requiring, among other things, that an immediate appeal from an interlocutory order "materially advance the ultimate termination of the litigation") with the quite different question of whether the interlocutory order already entered was case-dispositive and left nothing of the litigation except judgment and appeal.  The dissent fails to recognize the effect of a district court's contested interlocutory order already being case-dispositive on the plaintiff's adverseness to the final judgment.

piecemeal than an appeal of a dismissal or summary judgment order as the case either will end on appeal if the district court is affirmed or be remanded for further proceedings if the district court is reversed. If anything, this approach is less piecemeal than the dissent's approach, which encourages increased reliance on the interlocutory appeal statute.

For all these reasons, we conclude jurisdiction over this appeal exists under § 1291 and the Constitution. Now we turn to the merits of Fitel's appeal.

### III.  SANCTIONS RULINGS

Fitel's appeal challenges these rulings on EBG's discovery motions: (1) the district court's exclusion of Fitel's expert as a sanction for its untimely production of Rafuse's written expert report; and (2) the court's striking of Fitel's claim for attorney's fees as a sanction for its refusal to produce copies of its attorney's fee agreement and attorneys' bills. Our review of a district court's decision to impose sanctions under Rule 37 is "sharply limited to a search for an abuse of discretion and a determination that the findings of the trial court are fully supported by the record." Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1146-47 (11th Cir. 2006) (quotation marks and citations omitted); BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1048 (11th Cir. 1994); Pesaplastic, C.

A. v. Cincinnati Milacron Co., 799 F.2d 1510, 1519 (11th Cir. 1986). We discuss each in turn.

## A.    Exclusion of Expert Testimony

The district court excluded Fitel's legal expert because it found (1) Fitel violated Federal Rule of Civil Procedure 26(a)(2) and Local Rule 26.2(C) by failing to provide its expert witness report until three days after the expiration of the discovery period, and (2) Fitel had engaged in "willful" delay in producing the report, which the court described as "stonewalling." Fitel argues the district court abused its discretion in excluding its expert because Fitel timely produced its expert's affidavit, the affidavit complied fundamentally with the discovery rules, the rules do not require its expert's report to be produced before the close of discovery, and, in any event, the record establishes that any delay as to the report was substantially justified.

We start with Rule 26(a)(2), which requires a party to disclose to the other parties the identity of any expert witness it may use at trial to present evidence and "[e]xcept as otherwise stipulated or directed by the court, this disclosure shall . . . be accompanied by a written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2). Thus, "'[d]isclosure of expert testimony' within the meaning of [Rule 26] contemplates not only the identification of the expert, but also the

provision of [the expert's] written report." Reese v. Herbert, 527 F.3d 1253, 1265

(11th Cir. 2008); see Prieto v. Malgor, 361 F.3d 1313, 1317-18 (11th Cir. 2004).

The expert's written report must contain:

> a complete statement of all opinions to be expressed and the basis and
> reasons therefor; the data or other information considered by the witness
> in forming the opinions; any exhibits to be used as a summary of or
> support for the opinions; the qualifications of the witness, including a
> list of all publications authored by the witness within the preceding ten
> years; the compensation to be paid for the study and testimony; and a
> listing of any other cases in which the witness has testified as an expert
> at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). Here, it is undisputed that Fitel's complaint identified

its expert and on November 3, 2006 Fitel produced a written report that contained

all of the information required by Rule 26(a)(2)(B).

Rather, the dispute here concerns only the timing of the disclosure of the

expert's report. Rule 26(a)(2)(C) provides that, absent a stipulation or court order,

the expert report must be disclosed "at least 90 days before the trial date or the

date the case is to be ready for trial." In this case, however, no date had been set

for the trial or for the case to be ready for trial.[14] Nonetheless, the heart of EBG's

---

[14]EBG filed its expert exclusion motion on October 23, 2006, discovery was set to close on October 31, 2006, and Fitel produced its expert report on November 3, 2006. By Local Rule and the court's scheduling order the parties had twenty days to file a motion for summary judgment after the close of discovery. See N.D. Ga. Civ. Loc. R. 56.1(D). The parties then had thirty days after the court rules on the summary judgment motion(s) to file a consolidated pretrial order. The case is "presumed ready for trial" on the first trial calendar after the consolidated pretrial order has been filed. See Local Rules 16.4(A), 40.1. There was no pretrial order in this

argument is that Local Rule 26.2(C), when read with Federal Rule 26(b)(4)(A), requires disclosure of Fitel's expert report before the close of discovery so that the expert can be deposed within the discovery period.

In Reese, this Court recently examined the same Local Rule and the timing of the disclosure of an expert's report when a trial date had not yet been set.[15] The Reese Court first stated that "Rule 26 does not prescribe a specific deadline applicable" for disclosure of the expert's written report "because a trial date had not been set." Id. at 1265. The Court in Reese then read Local Rule 26.2(C)'s requirements, along with Rule 26(b)(4)(A)'s deposition prerequisite, and determined that both the expert's name and report should be disclosed before the close of discovery. Id. Here is how Reese reached that conclusion.

The Reese Court first stressed that Rule 26's "expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Reese, 527 F.3d at 1265 (quotation marks omitted). The Reese Court then noted that "in accordance with this purpose," Local Rule 26.2(C) requires

_____

case, no date set for the case to be ready for trial, and no trial date set.

[15]As we do here, Reese quoted and interpreted the Federal Rules of Civil Procedure as they were phrased in 2006, before the general restyling that became effective December 1, 2007. Reese, 527 F.3d at 1264-65 & n.18; see supra n.2.

that a party "shall designate" its expert "sufficiently early in the discovery period":
(1) "to permit the opposing party the opportunity to depose the expert"; and (2) "if
desired, to name its own expert" so that the second expert could also be deposed
"prior to the close of discovery." Id. (quoting Local Rule 26.2(C)).[16] While Local
Rule 26.2(C) does not reference the expert's written report, it does require the
expert be deposed "prior to the close of discovery." The Reese Court pointed out
that Rule 26(b)(4)(A) does not permit an expert to be deposed until after her report
is provided to the opposing party. Id. The syllogism in Reese appears to be: (1)
the expert must be deposed before the close of discovery (Local Rule 26.2(C)), (2)
the report must come before the expert's deposition (Rule 26(b)(4)(A)), and (3)
therefore the expert's report necessarily must come before the close of discovery.
In Reese, this Court concluded that plaintiff's filing of his expert affidavit seven
weeks after the close of discovery and in response to defendants' summary

---

[16]Northern District of Georgia Civil Local Rule 26.2(C) states:
> Any party who desires to use the testimony of an expert witness shall designate the
> expert sufficiently early in the discovery period to permit the opposing party the
> opportunity to depose the expert and, if desired, to name its own expert witness
> sufficiently in advance of the close of discovery so that a similar discovery deposition
> of the second expert might also be conducted prior to the close of discovery.
>
> Any party who does not comply with the provision of the foregoing paragraph
> shall not be permitted to offer the testimony of the party's expert, unless expressly
> authorized by court order based upon a showing that the failure to comply was
> justified.

Local Rule 26.2(C).

judgment motion violated Rule 26 and Local Rule 26.2(C) because disclosure of the expert's report was not before the close of discovery, much less sufficiently in advance of the close of discovery to furnish defendants an opportunity to depose that expert and obtain a rebuttal expert during the discovery period.  Id.

Here, Fitel did not produce Rafuse's written report until after the close of discovery.  Thus, Fitel's disclosure of Rafuse's written report after the close of discovery ran afoul of Rule 26 and Local Rule 26.2(C), as interpreted in Reese.[17]

Fitel argues its inclusion of Rafuse's expert affidavit in its complaint was enough to comply with Rule 26 and Local Rule 26.2(C).  We disagree.  Rule 26 mandates that an expert's written report contain specific information–such as the expert's compensation for study and testimony, a list of all publications the expert authored in the preceding ten years, and a list of all cases in which the expert testified at trial or by deposition in the preceding four years.  Fed. R. Civ. P. 26(a)(2)(B).  All of this information is wholly absent from Rafuse's affidavit.  This type of information is required in the expert's written report precisely because it is important information necessary to attorneys in preparation for deposing the expert.  Moreover, the affidavit does little more than assume the complaint's facts

---

[17]Although Reese was decided in May 2008, well after the 2006 conduct at issue here and the briefing in this appeal, EBG maintained throughout this appeal that Rule 26 and Local Rule 26.2(C) should be read together in the same way that Reese now reads them together.

are true and, on that basis, opines generally that EBG departed from the professional standard of care by not advising Fitel that its suggested approach to the "double dip" issue might violate the ADEA. The affidavit provides no meaningful analysis of how and why EBG's actions breached the standard of care. The written report Fitel ultimately produced, on the other hand, provides the level of detailed analysis that the expert disclosure rule requires. It simply came too late.

Alternatively, Fitel argues it could not produce a meaningful legal expert report without first taking the depositions of the EBG attorneys who had represented Fitel regarding its "no double dipping" policy and then reviewing those transcripts. Fitel contends it was justified in not producing the report until after those EBG depositions and it repeatedly advised EBG that EBG's rescheduling the depositions would delay Fitel's report. As discussed later, this argument, along with other undisputed facts in this record, provide substantial justification for Fitel's conduct but they do not negate the fact that the timing requirement in the rules was violated.[18] As this Court noted in <u>Reese</u>, "compliance

_____

[18]We note that EBG's motion for an extension of discovery asked for an extension through December 13, 2006. EBG's motion shows that EBG knew Fitel needed the EBG attorney depositions before producing a complete report and that December 13, 2006 was a more realistic time frame.

38

with the requirements of Rule 26 is not merely aspirational." Reese, 527 F.3d at

1266.

Nevertheless, determining that Fitel violated Rule 26 and Local Rule

26.2(C), as interpreted in Reese, comprises only half the inquiry. We still must

consider whether the sanction imposed by the district court was within its

discretion. Here, the district court excluded Rafuse's expert testimony. Under

Rule 37(c)(1), a district court clearly has authority to exclude an expert's

testimony where a party has failed to comply with Rule 26(a) unless the failure is

substantially justified or is harmless. See Rule 37(c)(1); Local Rule 26.2(C).[19]

The district court's sanction was based on its finding that Fitel had engaged in

"willful" delay in producing Rafuse's written expert report, which the court

characterized as "stonewalling." While the district court did not use the term

"substantially justified," the court's finding that Fitel's delay was willful and

"stonewalling" is effectively a finding of no such substantial justification. Fitel

argues the undisputed facts in the record do not support the

---

[19]Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." (Emphasis added). Similarly, Local Rule 26.2(C) provides that any party who does not comply with the provisions in the foregoing paragraph (see supra n. 16) "shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified." (Emphasis added.)

willfulness/stonewalling finding, but establish only substantial justification.  We agree and explain why.

First, this is not a case of complete failure to provide information about an expert witness.  Fitel identified Rafuse as its expert when it filed its complaint, confirmed that designation in its post-removal initial disclosures, and filed an affidavit of Rafuse with at least some information about her opinions.

Second, Fitel repeatedly told EBG it needed the EBG attorney depositions before Rafuse could do her report.  As early as June 2006, well before the end of the discovery period, Fitel's counsel informed EBG that Rafuse's report needed to "take into account the deposition testimony" of the EBG attorneys whose depositions the parties were scheduling and that Fitel "believe[d] her report can be completed within thirty . . . days of the completion of these four depositions."  See June 12, 2006 letter from Fitel's counsel to EBG's counsel.  Moreover, Fitel, also in May 2006, noticed the depositions of the EBG attorneys for late June, affording EBG over four weeks of advance notice.  If these EBG depositions had occurred as scheduled in late June, Fitel's Rafuse report would have been timely produced in mid- to late-July.  We know that because once Fitel had those four EBG depositions, it produced Rafuse's report in eighteen days.

40

Rather than those EBG depositions taking place in June, Fitel's counsel cooperated with EBG's counsel to schedule those depositions at the attorneys' convenience, and those depositions were not completed until September 27, 2006. Indeed, Fitel reiterated its position after scheduling difficulties arose with regard to the EBG attorney depositions, expressly reminding EBG's counsel in a July 11, 2006 letter that "we will need approximately thirty . . . days after the completion of the EBG lawyer depositions to finalize our expert report" and that if those depositions could not be scheduled until mid-September, "you should not expect our expert report until mid-October."[20] Once Fitel obtained the transcript of the final EBG attorney deposition, it promptly produced the expert report, which the parties agree complies with Rule 26(a)(2)(B).

Third, it is noteworthy that in June 2006, EBG itself moved for an extension of discovery from August 13, 2006 until December 13, 2006 and even noted that it was needed in part because Fitel "informed [EBG] that no expert report will be prepared . . . until approximately thirty days after [Fitel] deposes certain attorneys employed by EBG," and that "[o]nce such an expert report is furnished to it,

---

[20]At no time before filing its October 23, 2006 motion to exclude expert testimony did EBG complain of or object to Fitel's disclosed plan to submit its expert report when the EBG attorney depositions were completed and Fitel's expert had an opportunity to take into account the testimony of the EBG fact witnesses about whose professional conduct she was asked to opine.

[EBG] will want [time] to depose said expert and evaluate the necessity of identifying an expert to testify in response thereto." EBG well knew Fitel's report would come only after the EBG depositions. There was no element of surprise to EBG about when the expert report was going to be provided.

Fourth and most importantly, no trial date for the case had been set or was imminent. Fitel produced Rafuse's expert report on November 3, 2006, and EBG had ample time to take Rafuse's deposition in November 2006 and designate its rebuttal expert.[21] There is no claim here that the passage of time affected EBG's ability to employ a rebuttal legal expert or the ability of its expert to conduct needed analysis.

Fifth, this is not a case where the plaintiff knew all the facts anyway; rather, Fitel reasonably needed the depositions of the defendant EBG's attorneys before it produced its legal expert's report. Here, the issue involves not so much Fitel's interaction with EBG, which Fitel would have known at the outset of the case, but what actions, investigation, and research occurred within the confines of the law firm before EBG gave its advice, or allegedly failed to give any ADEA advice that

---

[21]See supra n. 14. The hearing on EBG's discovery motions was not until December 15, 2006. Just as the parties cooperated in scheduling the EBG attorney depositions in June through September, they easily could have cooperated in scheduling Rafuse's deposition in November 2006 and then the deposition of EBG's expert.

forms the crux of the case. Certainly, Fitel knew what advice the EBG attorneys gave to it and what the no double dipping policy said, but the attorneys' depositions were required to show what the EBG attorneys did, and knew, before rendering that advice or failing to render it, as Fitel alleges.[22]

In sum, the undisputed facts in the record reveal that Fitel failed to produce its legal expert's report not through willful delay or stonewalling, but from: (1) a good-faith attempt to accommodate the EBG attorneys in scheduling their depositions over several months (with the last one occurring on September 27, 2006, shortly before the end of discovery), rather than Fitel's insisting on taking all the EBG attorneys' depositions on the noticed, fixed dates in June 2006; and (2) a good-faith belief that the more "practical[]" and productive way to structure discovery in this legal negligence case was to identify its legal expert, engage in all relevant fact discovery of the EBG attorneys, and then to produce the expert's

_____

[22]In Reese, by contrast, this Court rejected the plaintiff's argument that his failure to disclose his expert's opinions until seven weeks after the close of discovery – and then only in his response to the defendants' summary judgment motion – was substantially justified because he needed the defendants' depositions. 527 F.3d at 1265-66. Reese involved a 42 U.S.C. § 1983 excessive force claim arising from the plaintiff's arrest by the defendant police officers. Obviously, in that case the plaintiff was present for all the relevant events concerning the arrest and use of force. See id. at 1266 (stating Reese's expert "could have rendered a report . . . based upon factual assumptions furnished to him by Reese"). Further, Reese's written disclosures did not identify an expert, his counsel verbally identified the expert only twelve days before discovery closed, and Reese never sent opposing counsel a written report at all (or other information from his expert) but simply filed the expert's affidavit in opposition to the defendants' summary judgment motion.

43

written report and to engage in expert discovery. Further, this approach was reasonable given the nature of the case and the actual need for those attorney depositions in order to have a meaningful legal expert report.

Simply put, given all these particular factual circumstances in this case, we cannot say the record supports the district court's finding that Fitel engaged in willful or "stonewalling" delay as to the written report of its expert. Instead, we conclude that the undisputed facts show Fitel had substantial justification for its conduct as to its expert report, that the record does not support the district court's willful-delay determination as to that report, and thus the district court abused its discretion in excluding Rafuse's expert testimony. Therefore, we reverse the district court's exclusion of Fitel's expert and subsequent dismissal of Fitel's entire complaint with prejudice and remand for further proceedings.

## B. Dismissal of Attorney's Fees Claim

Fitel also challenges the district court's decision to dismiss Fitel's attorney's fees claim as a sanction for Fitel's failing to produce its attorney's fee agreement and attorneys' bills incurred in the instant case. The district court found that there was a complete and willful failure by Fitel to provide EBG with the required documents given that Fitel expressly sought to recover its attorney's fees incurred in this case.

The district court imposed the sanction pursuant to Rule 37(d) and 37(b)(2)(C). Rule 37(d) states that if a party

> fails . . . to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

Fed. R. Civ. P. 37(d). In turn, Rule 37(b)(2)(C) lists dismissal as a permitted sanction, stating that the court may issue "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or <u>dismissing the action or proceeding or any part thereof</u>, or rendering a judgment by default . . . ." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). Thus, these rules permit dismissal as a sanction for failure to produce documents.

Construing these same rules, this Court concluded, "where appropriate, a court is authorized to strike pleadings, stay proceedings, dismiss the action or any part thereof, or render a judgment by default against a disobedient party." <u>United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.</u>, 126 F.3d 1314, 1317 (11th Cir. 1997).[23] However, we also indicated that a district court may impose

---

[23]The <u>Route 1</u> Court noted that Rule 37 on its face does not require that a court formally issue an order compelling discovery before sanctions are authorized. 126 F.3d at 1317. However, the Court concluded that a district court may not impose sanctions pursuant to Rule 37(d) that dismiss a party's claims in "the absence of either a motion to compel filed by the [opposing party] or an order of the court compelling discovery." <u>Id.</u> at 1318. Here, however, EBG did move the court, alternatively to its motion for sanctions, for an order compelling Fitel to

the severe sanction of dismissal of a claim with prejudice only where the party's

noncompliance is willful or in bad faith.  Id. at 1317-18.[24]

As to Fitel's attorney agreement and attorney's bills, there is record

evidence to support the district court's finding of a complete and willful failure to

comply with EBG's discovery requests.  The documents responsive to EBG's

Document Request were directly relevant to Fitel's claim for attorney fees.  In its

answer to the Document Request, Fitel first agreed to produce the responsive

documents (redacted to protect privilege), as follows:

> [Fitel] objects to Request Number 32 to the extent that it improperly
> seeks privileged communications between [Fitel] and its counsel. [Fitel]
> further objects to Request Number 32 to the extent that it seeks
> information that is not relevant to any claim or defense asserted in the
> action.  Subject to and without waiving the foregoing objection and the
> General Objections above, [Fitel] will produce documents responsive to
> Request Number 32 that reflect the amounts of attorneys fees billed to

produce the records substantiating its attorney's fees claim.

[24]In cases where there has been a prior order compelling discovery, this Court has stated
that the ultimate sanction of dismissal with prejudice should be imposed only in cases of bad
faith, willful delay, or flagrant disregard for the district court's discovery orders.  Wouters v.
Martin County, Fla., 9 F.3d 924, 934 (11th Cir. 1993); Cox v. Am. Cast Iron Pipe Co., 784 F.2d
1546, 1556 (11th Cir. 1986); McKelvey v. AT&T Techs., Inc., 789 F.2d 1518, 1520 (11th Cir.
1986).  "The trial court's discretion regarding discovery sanctions is not unbridled.  We have
consistently held that while district courts have broad powers under the rules to impose sanctions
. . . , dismissal is justified only in extreme circumstances and as a last resort."  Wouters, 9 F.3d at
933 (citations omitted).  In Route 1, where there was no prior discovery order, we recognized the
need for a showing of bad faith or willful delay to support the sanction of dismissal.  See Route
1, 126 F.3d at 1317-18.  If bad faith or willful delay is required to support dismissal where there
was a prior discovery order, it is certainly required where there is only a motion to compel, as in
this case.

46

and paid by [Fitel] in this action (redacted, if necessary, to protect privileged information).

Nevertheless, despite repeated entreaties, Fitel produced nothing at all. Instead, Fitel (1) decided unilaterally that a summary of its counsel's bills–rather than the documents EBG requested and Fitel stated it would provide with redactions–would be sufficient, and then (2) told EBG that even the summary would not be produced until EBG agreed not to challenge the sufficiency of Fitel's production. At the time of the motions hearing and court's sanctions ruling, Fitel still had produced <u>nothing</u> at all, not even the summary or the underlying agreement. The district court also found that Fitel's conduct evinced a strategy by Fitel and/or its counsel of "we're going to make the judge order us to" produce the attorney's fees documents.[25]

---

[25]Rule 37(d) provides that a district court may sanction a party who fails, among other things, "to serve answers or objections to interrogatories submitted under Rule 33" or "to serve a written response to a request for inspection submitted under Rule 34." Although Fitel served a response to the Document Request, that is not enough to insulate it from a Rule 37(d) sanction under these facts. See <u>In re Plywood Antitrust Litig.</u>, 655 F.2d 627, 638 (5th Cir. Unit A Sept. 1981) (affirming a district court's imposition of Rule 37(d) sanctions for failure to respond to interrogatories and stating that "under appropriate circumstances, evasive and incomplete answers . . . are tantamount to no answers at all" (citations omitted)); <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (<u>en banc</u>) (accepting as binding precedent all Fifth Circuit cases decided before October 1, 1981). This is particularly true where the response said Fitel would produce the documents and Fitel then produced nothing at all. We recognize Fitel later stated it was willing to produce a summary of the fees and expenses if EBG would agree that Fitel's summary resolved the discovery dispute. However, this misses the point that Fitel had an obligation to produce something and could not simply say it would produce nothing unless EBG agreed in advance to the adequacy of its summary that EBG had not even seen. Fitel, at a minimum, readily could have produced its fee agreement and revealed the amount of the fees

47

In sum, Fitel's conduct as to its attorney's fee agreement and the attorney bills is starkly different from its cooperative conduct as to Rafuse's written expert report. Further, while we may have chosen a different sanction (such as awarding EBG its costs in filing its motion to compel), the district court's choice of sanction – dismissal of the attorney's fee claim – was within its range of options under Rule 37(d) and 37(b)(2)(C) given its finding of a complete and willful failure to comply with EBG's Discovery Request. Thus, we cannot say the district court abused its discretion in its dismissal of Fitel's attorney's fees claim pursuant to Rule 37(d) and 37(b)(2)(C).

## IV. CONCLUSION

For the reasons set forth above, we reverse the district court's exclusion of Fitel's expert witness and dismissal of Fitel's entire complaint but affirm its dismissal of Fitel's claim for attorney's fees. We remand the case to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

charged to date.

TJOFLAT, Circuit Judge, dissenting:

> It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute. And since the jurisdictional statutes prevailing at any given time are so much a product of the whole history of both growth and limitation of federal-court jurisdiction since the First Judiciary Act, they have always been interpreted in the light of that history and of the axiom that <u>clear statutory mandate must exist to found jurisdiction</u>.

<u>Carroll v. United States</u>, 354 U.S. 394, 399, 77 S. Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957)(citations omitted)(emphasis added).  Despite this guidance from the Supreme Court and our court's precedent to the contrary, a majority of this court today holds that a party aggrieved by certain interlocutory orders can bypass the traditional requirements governing discretionary interlocutory appellate review, <u>see</u> 28 U.S.C. § 1292(b), and instead <u>automatically</u> receive appellate review by manufacturing a final judgment through inviting the district court to enter a voluntary dismissal with prejudice.  Because the majority's decision is at odds with both fundamental appellate jurisdiction tenets and our prior precedent, I respectfully dissent.  Part I explains and applies to this case the background principles animating appellate jurisdiction and our judiciary's long-standing policy disfavoring piecemeal appellate review.  Part II discusses the direct precedent that I believe controls the disposition of this case – precedent that the majority skirts

49

around and ignores. Part III briefly concludes with guidance for future litigants on the proper way to proceed when faced with a case dispositive discovery motion.

I.

We start any jurisdictional analysis by being mindful of two fundamental principles that limit our court's authority. First, a court of appeals can only entertain an appeal from a district court order if Congress has, by statute, conferred the court with jurisdiction. See, e.g., Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1280 (11th Cir. 2001)("Article III of the Constitution provides the outer limits of the federal courts' jurisdiction and vests in Congress the power to determine what the extent of the lower courts' jurisdiction will be."). Second, even where Congress has conferred jurisdiction, the Constitution requires that there must exist a real case or controversy. U.S. Const. art. III, § 2. See also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240–41, 57 S. Ct. 461, 464, 81 L.Ed. 617 (1937)("A 'controversy' in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a

50

conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.")(citations omitted).  I address in turn both of these principles and how they apply in this context.

A.

As a general rule, Congress has statutorily conferred broad jurisdiction to the courts of appeals to hear <u>final</u> decisions from district courts.  28 U.S.C. § 1291.[26] A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  <u>Catlin v. United States</u>, 324 U.S. 229, 233, 65 S. Ct. 631, 633, 89 L.Ed. 911 (1945).  Although the so-called "final judgment rule" serves many purposes, the central objectives are to promote the policies of judicial efficiency, avoid piecemeal litigation, and preserve the independence of district courts.  <u>See</u> <u>Constr. Aggregates, Ltd. v. Forest Commodities Corp.</u>, 147 F.3d 1334, 1336 (11th Cir. 1998). "If a party seeks to appeal a district court order that does not constitute a 'final decision' under § 1291 (and does not fall within an exception to the final judgment rule), we must dismiss

---

[26] 28 U.S.C. § 1291 provides that:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

51

the case for lack of appellate jurisdiction." SEC v. Carrillo, 325 F.3d 1268, 1272 (11th Cir. 2003).

In certain instances, though, Congress has granted the courts of appeals jurisdiction to hear interlocutory, non-final orders.  For example, Congress has conferred jurisdiction over interlocutory appeals with respect to injunctions,[27] receiverships,[28] and admiralty decrees determining the rights and liabilities of the parties.[29]  Moreover, in addition to these general grants of interlocutory appellate authority, Congress has at times provided for specialized interlocutory appellate jurisdiction.  See, e.g., 18 U.S.C. § 3626(f)(3)(providing for "the right to an interlocutory appeal of the judge's selection of the special master" under the Prison Litigation Reform Act provisions).  Thus, when Congress has chosen to

---

[27] See 28 U.S.C. § 1292(a)(1) ("[T]he courts of appeals shall have jurisdiction of appeals from ... Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court")

[28] See 28 U.S.C. § 1292(a)(2) ("[T]he courts of appeals shall have jurisdiction of appeals from ... Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property")

[29] See 28 U.S.C. § 1292(a)(3) ("[T]he courts of appeals shall have jurisdiction of appeals from ... Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed")

52

allow parties to seek immediate interlocutory appellate review, it has done so

explicitly.

As we have often stated, discovery motions are generally not final orders for

purposes of obtaining appellate jurisdiction. Carpenter v. Mohawk Indus., Inc.,

541 F.3d 1048, 1052 (11th Cir. 2008). Therefore, discovery orders are normally

not immediately appealable. Id.; Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.,

680 F.2d 743, 745 (11th Cir. 1982). Congress has not statutorily authorized

interlocutory appellate review for discovery motions, and for sound policy

reasons—the preservation of district court integrity and the promotion of judicial

efficiency dictates that parties should not be able to circumvent lower courts by

seeking piecemeal appellate review. Instead, through the Interlocutory Appeals

Act of 1958, Congress created a bi-level procedure for establishing appellate

jurisdiction to review non-final orders in civil actions. See 28 U.S.C. § 1292(b).[30]

---

[30]The full text of 28 U.S.C. § 1292(b) is as follows:

When a district judge, in making in a civil action an order not otherwise
appealable under this section, shall be of the opinion that such order involves a
controlling question of law as to which there is substantial ground for difference
of opinion and that an immediate appeal from the order may materially advance
the ultimate termination of the litigation, he shall so state in writing in such order.
The Court of Appeals which would have jurisdiction of an appeal of such action
may thereupon, in its discretion, permit an appeal to be taken from such order, if
application is made to it within ten days after the entry of the order: Provided,
however, That application for an appeal hereunder shall not stay proceedings in
the district court unless the district judge or the Court of Appeals or a judge
thereof shall so order.

Under section 1292(b), appellate courts may, at their discretion, review non-final orders if a trial judge certifies that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Id. Absent both certification from a trial judge and acceptance of the appeal by the Court of Appeals, parties are not permitted to have immediate review of discovery orders.

As axiomatic as these jurisdictional principles might seem, in the present case, OFS Fitel LLC and OFS BrightWave LLC (collectively "Fitel") have engineered a scheme of jurisdictional gymnastics to circumvent the section 1292(b) trial court certification/appellate court acceptance requirement. Here, when presented with an adverse discovery order, Fitel did not seek section 1292(b) certification from the district court. Instead, Fitel sought immediate automatic appellate review by asking the district court to dismiss the entire case with prejudice.[31] While in form, Fitel has presented a final order for appeal (albeit a

_____

[31]In its briefs, Fitel objects to this characterization of the lower court proceedings. Fitel instead suggests that it merely presented the district court with the information that its sanction was case dispositive. However, the record strongly suggests that Fitel sought a dismissal with prejudice. The district court's January 7, 2007 order dismissing the case confirms this fact. Referring to the fact that, at the December 15 hearing, "counsel for the Plaintiffs . . . suggested that, in lieu of proceeding with the remaining pending discovery motions, the Court simply proceed to dismiss the case," the January 7 order stated: "based on [Plaintiff's] stipulation that the Court's ruling [excluding the expert witness] is 'case dispositive,' the Court dismissed the case."

54

final order without the requisite adverseness, an issue that I address next), the substance of the appeal reveals that this is an appeal from an interlocutory discovery order. As we have previously stated, when an appeal from a final order is merely masquerading as an appeal from an interlocutory order, we lack jurisdiction to hear the case. See Druhan v. American Mutual Life, 166 F.3d 1324, 1326 (11th Cir. 1999)("In substance, this is not an appeal from a final judgment, but an appeal from an interlocutory order . . . . The problem with [this] approach is that it is not statutorily authorized.").

Since Congress has not statutorily authorized this approach, I believe that Fitel should not be allowed to circumvent the proscribed boundaries of our court's jurisdiction and receive an automatic appeal by requesting that the district court enter an order that is "final" only in form, but not in substance.

## B.

However, even if I were to concede that Fitel is appealing a final order, this Court still does not have jurisdiction to hear this appeal because the final order in question here lacks the Constitutional requisite of adverseness. It is this point that

---

If Fitel disputed the district court's characterization of the proceedings, the proper avenue to raise an objection is through Rule 59(e) of the Federal Rules of Civil Procedure. Rule 59(e) provides parties with the option of petitioning the court to alter or amend a judgment. Because Fitel did not pursue this route, we must assume that Fitel did not dispute the district court's characterization of the motion to dismiss with prejudice.

55

I next address. As a formal matter, it is clear that we have no jurisdiction to review the judgment in this case, because there is no case or controversy. The jurisdiction of the federal courts, under Article III of the U.S. Constitution, is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2. At the heart of the case or controversy requirement is the presence of adverse parties. See GTE Sylvania, Inc. v. Consumers Union of the United States, Inc., 445 U.S. 375, 382–83, 100 S. Ct. 1194, 1199-1200, 63 L.Ed.2d 467 (1980).

As the Supreme Court has previously noted, the purpose of the Constitutional case-or-controversy requirement is to "limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. 83, 95, 88 S. Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). Moreover, the clash of adverse parties "sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Accordingly, there is no Article III case or controversy when the parties desire "precisely the same result." Moore v. Charlotte-Mecklenburg Board of Education, 402 U.S. 47, 48, 91 S. Ct. 1292, 1293, 28 L.Ed.2d 590 (1971)(per curiam).

This Constitutional mandate imposes serious restrictions on our court's ability to hear cases. We are not free to disregard the Constitutional adverseness requirement merely because we desire to reach the merits of a claim. This case is no exception. Here, it is without dispute that neither Fitel nor Epstein Becker & Green, P.C. ("EBG") objected to the district court's order dismissing the case with prejudice. Indeed, there was no reason for EBG to object, and Fitel invited the dismissal with prejudice. See supra note 6. Because there was no adverseness by either party, we have no case or controversy. Accordingly, we are Constitutionally barred from hearing the case before us.

The majority tries to circumvent the Constitutional requirement of adverseness by noting that Fitel is adverse to the merits of the decision—that is, Fitel did not desire the case dismissal, but only accepted the dismissal with prejudice because the district court had entered a case-dispositive order. Indeed, under the majority's reading, Fitel merely "suggested" that for "efficiency reasons" the court should place its judgment "in the final form of a case termination." Even if that is the case—which the record does not suggest one way or the other—then Fitel should have raised at least some objection and at least sought section 1292(b) certification of an interlocutory order. Fitel's failure to raise any type of objection to the dismissal with prejudice necessitates a finding

57

that we cannot hear this case for lack of a real "case or controversy."  See Moore, 402 U.S. at 48,  91 S. Ct. at 1293 (stating then when "both litigants desire precisely the same result," there is "no case or controversy within the meaning of Art. III of the Constitution"); see also Reynolds v. Roberts, 202 F.3d 1303, 1312 (11th Cir. 2000) ("a party normally has no standing to appeal a judgment to which he or she consented").

Accordingly, I believe that this court is incapable of hearing Fitel's appeal for both the lack of statutory jurisdiction and the lack of the requisite Constitutional adverseness.  The majority ignores these axiomatic principles in an effort to reach the merits—a decision that I believe both flaunts limits on our authority and sends the wrong message to litigants and the district judges of our circuit.

## II.

Apart from the Constitutional and Congressional limitations on our jurisdiction, this court has direct precedent that necessitates that we do not reach the merits of Fitel's appeal.  The majority, in a desire to reach the merits of Fitel's claims, limits the reach of our prior decisions.  Because I believe that these holdings are directly on point, I turn my attention now to that precedent.

## A.

The holdings of <u>Druhan v. American Mutual Life</u>, 166 F.3d 1324 (11th Cir. 1999), and <u>Woodard v. STP Corp.</u>, 170 F.3d 1043 (11th Cir. 1999), are directly on point and therefore should control our decision.  In both cases, the plaintiff, after suffering an adverse interlocutory ruling, moved the district court to dismiss the action with prejudice, and then, after the court granted the motion, appealed the dismissal[32] for the purpose of obtaining appellate review of the interlocutory ruling.[33]  <u>Druhan</u>, 166 F.3d at 1325; <u>Woodard</u>, 170 F.3d at 1044.  In both cases, we

---

[32] Both <u>Druhan</u> and <u>Woodard</u> were appeals brought under section 1291.  <u>See</u> <u>Druhan</u>, 166 F.3d at 1325; <u>Woodard</u>, 170 F.3d at 1044.

[33] In <u>Druhan</u>, Virginia Druhan brought suit against American Mutual Life Insurance Company ("Mutual") in Alabama state court, alleging that Mutual had fraudulently induced her to purchase a life insurance policy.  <u>Druhan</u>, 166 F.3d at 1324.  Mutual removed the case to federal court, on the basis that since Druhan's policy was "purchased in connection with a benefits package provided by her employer," her suit was preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.  <u>Id.</u> at 1324-25.  Druhan, "contending that her claims were not preempted by ERISA, moved the district court to remand the case to state court."  <u>Id.</u> at 1325.  The district court denied the motion.  <u>Id.</u>

> Druhan then moved the district court to dismiss her complaint with prejudice.  In her moving papers, she stated that she had no claims under ERISA and thus the court's order denying her motion to remand effectively left her without a remedy.  The court granted her request, and subsequently entered a final judgment dismissing Druhan's claims with prejudice.

<u>Id.</u> (footnote omitted).  Druhan immediately appealed the judgment to obtain review of the district court's interlocutory order denying her motion to remand.  <u>Id.</u>
    In <u>Woodard</u>, Woodard brought a class action against STP Corporation and First Brands Corporation in Alabama state court and the state court granted a conditional class certification.  170 F.3d at 1044.  The defendants removed the case to federal court, and Woodard moved the court to remand the case to the state court.  <u>Id.</u>  The district court denied the motion and vacated the state court's conditional class certification.  <u>Id.</u>  Woodard then moved the district court for a voluntary dismissal without prejudice.  <u>Id.</u>  The defendants objected to the court dismissing the case without prejudice because they had incurred considerable expenses in litigating the case and

59

held that we lacked jurisdiction to review the interlocutory ruling. Druhan, 166 F.3d at 1326; Woodard, 170 F.3d at 1044. Druhan had appealed from a non-adverse final judgment; "[n]either party contend[ed] that the district court erred in entering final judgment for the defendant—the plaintiff specifically requested it and the defendant (understandably) [was] not complaining." Druhan, 166 F.3d at 1326. As I have explained earlier, adverse parties are indispensable to the creation of the "case or controversy" required by Article III of the Constitution to enable an appeal to go forward. Id. Since adverse parties were not present, there was no "case or controversy" to review, and the appeal was accordingly dismissed. Id. Like Druhan, Woodard attempted to appeal a "judgment [that was] not appealable . . . because it was obtained at the request of the plaintiff and there [was] therefore no 'case or controversy' in regard to it." Woodard, 170 F.3d at 1044.

Druhan asked us to ignore the fact that she had asked for the dismissal, and that American Mutual had not objected to it, and to look "beyond the form of the appeal to the substance thereof," to find that the parties, although not adverse to the dismissal, were adverse as to the district court's decision not to remand the case to the state court. Druhan, 166 F.3d at 1326. We agreed that "in substance,

---

did not want to face another suit in state court. Id. The court granted Woodard's motion, but dismissed the case with prejudice. Id. Woodard appealed the dismissal, intending to obtain appellate review of the district court's interlocutory order denying his motion to remand the case. Id.

[Druhan's appeal was] not an appeal from a final judgment, but an appeal from an interlocutory order denying [her] motion to remand." Id. Druhan had "requested [the dismissal] only as a means of establishing finality in the case such that [she] could immediately appeal the interlocutory order – an order that [she] believe[d] effectively disposed of her case." Id. We then explained as follows:

> The problem with [Druhan's] approach is that it is not statutorily authorized. Congress has clearly stated the circumstances under which this court may hear an appeal from an interlocutory order. See 28 U.S.C. § 1292 (1994). . . . The district court's order denying remand is not among the orders from which an appeal lies as a matter of right, and the plaintiff did not seek an appeal by certification [pursuant to 28 U.S.C. § 1292(b)]. The plaintiff instead attempts to appeal the interlocutory order by obtaining a dismissal with prejudice [and appealing the final judgment pursuant to 28 U.S.C. § 1291]. There may (or may not) be good policy reasons for allowing an appeal to proceed in this manner. That, however, is a decision that rests in the hands of Congress, which, along with the Constitution, sets the boundaries of this court's jurisdiction. See Swint v. Chambers County Comm'n, 514 U.S. 35, 45–48, 115 S. Ct. 1203, 1209–11, 131 L. Ed. 2d 60 (1995). This appeal lies beyond those boundaries.

Id. at 1326–27 (citations omitted)(footnotes omitted). Thus, in looking "beyond the form of the appeal to the substance thereof," what we saw in Druhan was an appeal of an interlocutory order which we lacked statutory authority to hear. Id. at 1326.

B.

61

Fitel contends that the Druhan/Woodard jurisdictional holdings cannot be squared with United States v. Procter & Gamble Co., 356 U.S. 677, 78 S. Ct. 983, 2 L.Ed.2d 1077 (1958), and Greenhouse v. Greco, 544 F.2d 1302 (5th Cir. 1977), a former Fifth Circuit decision.[34]  According to Fitel, these cases stand for two propositions: if a plaintiff suffers an adverse, and dispositive, interlocutory ruling and then dismisses its case with prejudice and appeals, (1) the appeal presents an Article III case or controversy and (2) this court would have jurisdiction to hear the appeal under section 1291, despite the appeal being based on an interlocutory, rather than a final, order.  I disagree with Fitel's reasoning.

1.

In United States v. Procter & Gamble Company, 356 U.S. 677, 678, 78 S. Ct. 983, 984, 2 L.Ed.2d 1077 (1958), the United States, in effect,[35] voluntarily

[34] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), we adopted as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981.  Greenhouse was decided prior to that date and therefore prior to Druhan and Woodard.  Hence, we disregard Durhan and Woodard's holdings to the extent that they contradict Greenhouse's, as our decision in Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000), dictates that "[w]here . . . prior panel decisions conflict we are bound to follow the oldest one."

[35] In Procter & Gamble, the Government sued Procter & Gamble after a federal grand jury refused to indict the company for violating the criminal antitrust laws.  Procter & Gamble, 356 U.S. at 678, 78 S. Ct. at 984.  During discovery in the civil action, Procter & Gamble requested that the Government disclose the transcripts of the grand jury proceedings.  Id.  The Government resisted the request, the district court ordered it to disclose the transcripts, and the Government, "adamant in its refusal to obey, filed a motion in the District Court requesting that those orders be amended to provide that, if production were not made, the court would dismiss the complaint."  Id. at 678-79, 78 S. Ct. at 984-85.  The district court entered the order, amended as

62

dismissed its civil antitrust action against Procter & Gamble in response to an

unfavorable interlocutory order and then directly appealed the district court's

decision to the Supreme Court under 15 U.S.C. § 29.[36] Procter & Gamble, 356

U.S. at 679–80, 78 S. Ct. at 985. The Supreme Court held that it had jurisdiction

to hear the appeal. It explained:

> Appellees urge that this appeal may not be maintained because
> dismissal of the complaint was solicited by the Government. They
> invoke the familiar rule that a plaintiff who has voluntarily dismissed
> his complaint may not sue out a writ of error. See Evans v. Phillips,
> [17 U.S. 73, 4 L. Ed. 516 (1819)]; United States v. Babbitt, 104 U.S.
> 767, 26 L. Ed. 921 [(1881)]. The rule has no application here. The
> Government at all times opposed the production orders. It might of
> course have tested their validity in other ways, for example, by the
> route of civil contempt. Yet it is understandable why a more
> conventional way of getting review of the adverse ruling might be
> sought and any unseemly conflict with the District Court avoided.
> When the Government proposed dismissal for failure to obey, it had
> lost on the merits and was only seeking an expeditious review.
> This case is therefore like Thomsen v. Cayser, 243 U.S. 66, 37 S. Ct.
> 353, 61 L. Ed. 597 [(1917)], where the losing party got the lower

---

the Government requested, and dismissed the case. Id. at 680, 78 S. Ct. at 985.

[36] The version of 15 U.S.C. § 29 then in effect stated

> In every civil action brought in any district court or the United States under any of
> said Acts (antitrust acts), wherein the United States is complainant, an appeal
> from the final judgment of the district court will lie only to the Supreme Court.

15 U.S.C. § 29 (1948).

63

court to dismiss the complaint rather than remand for a new trial, so that it could get review in this Court. The court, in denying the motion to dismiss, said "The plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they might come to this court without further delay."

Id. at 680–81, 78 S. Ct. at 985–86 (quoting Thomsen, 243 U.S. at 83, 37 S. Ct. at 358).

The Court's holding was in response to Procter & Gamble's argument that the Government had sought, i.e., consented to, the judgment and therefore waived its right to challenge the interlocutory orders on appeal. Procter & Gamble, 356 U.S. at 680, 78 S. Ct. at 985;[37] see also Shores v. Sklar, 885 F.2d 760, 764 n.7 (11th Cir. 1989)(en banc)(explaining that the "consent-to-judgment doctrine does not implicate the subject matter jurisdiction of the court" but rather that it rests on waiver of error). The Court was simply stating that the Government had not

---

[37] The Procter & Gamble Court cited Evans v. Phillips, 17 U.S. 73, 4 L. Ed. 516 (1818), and United States v. Babbitt, 104 U.S. 767, 768, 26 L. Ed. 92 (1881), as supporting the argument put forward by Procter & Gamble. 356 U.S. at 680, 78 S. Ct. at 985. Evans states only that "[a] writ of error will not lie on a judgment of nonsuit." 17 U.S. at 73. Babbit, though, has a more detailed holding, in which the Court explained

> In Pacific Railroad v. Ketchum (101 U.S. 289), we decided that when a decree was rendered by consent, no errors would be considered here on an appeal which were in law waived by such a consent. In our opinion, this case comes within that rule. The consent to the judgment below was in law a waiver of the error now complained of. For this reason the judgment below must be affirmed.

Babbit, 104 U.S. at 768.

waived its objection to the district court's interlocutory order by requesting a final judgment—this is why the Court noted that the "government at all times opposed the production" and cited to Thomsen, where it rejected the same "consent judgment" argument advanced by Procter & Gamble. Procter & Gamble, 356 U.S. 680-81, 78 S. Ct. at 985-86; see Thomsen, 243 U.S. at 82, 37 S. Ct. at 357 (describing the argument in support of appellee's motion to dismiss the appeal as: "[t]he judgment of the circuit court was entered in the form finally adopted at the request of the plaintiffs and by their consent, and the errors assigned by plaintiffs were waived by such request and consent").

Procter & Gamble, then, deals only with whether the plaintiff waived its objection to the interlocutory order by requesting a dismissal—it never directly addresses the case or controversy issue we considered in Druhan. Nor does the fact that the Court heard the Government's appeal in Procter & Gamble implicitly foreclose our Article III holding in Druhan. Procter & Gamble never argued that the Government lacked the requisite adversity to the final order, and "when questions of jurisdiction have been passed on in prior decisions sub silentio, [the] Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before [the Court]." Hagans v. Lavine, 415 U.S. 528, 533 n.5, 94 S. Ct. 1372, 1377 n.5, 39 L. Ed. 2d 577 (1974).

65

Procter & Gamble also does not address our Druhan holding that Congress has not authorized the approach Druhan used—obtaining the dismissal of the case for the purpose of appealing a case dispositive interlocutory order. At the time of the Government's appeal, the statutory law did not provide the Supreme Court with jurisdiction to hear an interlocutory appeal of the order the Government wanted to challenge; under section 15 of title 28 of the U.S. Code, all that the Government could bring to the Supreme Court was a final judgment. Thus, the Government's only options for obtaining Supreme Court review of the district court's interlocutory order were to either request that the district court dismiss its case and appeal the dismissal, or suffer the dismissal of its case as a contempt sanction and appeal the sanction, an option the Court described as "unseemly." Procter & Gamble, 356 U.S. at 681, 78 S. Ct. at 986. Fitel, by contrast, had the option of requesting the district court to certify the interlocutory order at issue for appeal under § 1292(b).[38]

[38] In addition to its argument based on Procter & Gamble, Fitel, citing Judge Barkett's concurrence in Druhan, suggests that Druhan's holdings do not apply when the interlocutory order at issue has the effect of dismissing the plaintiff's case and contends that the district court's order striking its expert witness effectively dismissed its legal malpractice claim. See Graves v. Jones, 361 S.E.2d 19, 20 (Ga. Ct. App. 1987) ("[E]xcept in clear and palpable cases (such as the expiration of a statute of limitation), expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice."). The concurrence stated

> I am not prepared at this time to agree with the [the majority's discussion] in
> footnote 7 rejecting outright our sister circuits' views permitting appellate review
> of a "voluntary dismissal where such a dismissal was granted only to expedite

review of an order which had in effect dismissed appellant's complaint." Studstill v. Borg Warner Leasing, 806 F.2d 1005, 1008 (11th Cir.1986) (collecting cases). It is unnecessary to confront this issue directly, as the cases permitting such review do so only if it is clear that the appellant has "lost on the merits" and " 'only seeks' an 'expeditious review.'" Laczay v. Ross Adhesives, 855 F.2d 351, 355 (6th Cir.1988) (quoting United States v. Procter & Gamble Co., 356 U.S. 677, 78 S. Ct. 983, 2 L. Ed.2d 1077 (1958)). The district court's denial of Druhan's motion to remand, however, did not have the effect of dismissing her action. Druhan still had the ability to make her claim under ERISA.

Druhan, 166 F.3d at 1327.

The concurrence quoted our decision in Studstill, which had quoted, in dicta, the Sixth Circuit's holding in Raceway Properties v. Emprise Corp., 613 F.2d 656 (6th Cir. 1980). See Druhan, 166 F.3d at 1327 n.7 (distinguishing Studstill from cases in which the plaintiff voluntarily dismisses his complaint in response to an unfavorable interlocutory order). Raceway relied on the Supreme Court's decision in Procter & Gamble. Raceway, 613 F.2d at 657. The concurrence also quoted the Sixth Circuit's decision in Laczay v. Ross Adhensives, 855 F.2d 351, 355 (6th Cir. 1988), which relied on both Raceway and Procter & Gamble.

The concurrence, in relying on Raceway and, by extension, Procter & Gamble, at least implicitly argued that these cases stood for the proposition that if the interlocutory order effectively dismissed the plaintiff's cause of action, there would be a case or controversy under Article III and we could hear the plaintiff's appeal pursuant to 28 U.S.C. § 1291. Procter & Gamble does not stand for this proposition, see supra Part II.B.1., and neither does Raceway.

In Raceway, the plaintiff voluntarily dismissed his case with prejudice after the district court denied his motion for summary judgment and, in so doing, resolved an issue of law against the plaintiff. Raceway, 613 F.2d at 657. The appellee in Raceway, as in Procter & Gamble, challenged the court's jurisdiction to hear the appeal, relying on the well-established rule that parties to a consent judgment waive the right to appeal that judgment. Id. (citing Scholl v. Felmont Oil Co., 327 F.2d 697, 700 (6th Cir. 1964)(holding that consent to a judgment waives the appellant's objections to that judgment, in support of the appellee's argument). The Sixth Circuit interpreted Procter & Gamble to create an exception to that rule, holding that "the judgment below is appealable [as a final order under 21 U.S.C. § 1291] since appellant's solicitation of the formal dismissal was designed only to expedite review of an order which had in effect dismissed appellant's complaint." Id. Similarly, in Laczay v. Ross Adhesives, 855 F.2d 351 (6th Cir. 1988), the Sixth Circuit again held that Procter & Gamble created an exception to the rule that parties to a consent judgment waive any objections. Laczay, 855 F.2d at 355 ("The basic requirement for appealability of a consent judgment is that the one proposing or soliciting it shall have 'lost on the merits and [be] only seeking an expeditious review.'")(quoting Procter & Gamble, 356 U.S. at 681, 78 S. Ct. at 985).

Judge Barkett's concurrence, then, rests on inapposite cases—cases that deal only with waiver—and provides no support for Fitel's suggestion that the allegedly case-dispositive nature of the district court's order striking its expert provides us with Article III jurisdiction to hear its appeal. Moreover, the logic of Druhan's majority opinion forecloses Fitel's argument. I fail to

2.

Like Procter & Gamble, Greenhouse does not explicitly address the question before us, whether Fitel's appeal presents an Article III case or controversy. Fitel contends that Greenhouse addresses the question implicitly and answers it in the affirmative.

Greenhouse involved a class action seeking to "end[] alleged segregation and other racially discriminatory practices in the parochial schools in the Roman Catholic diocese of Alexandria, Louisiana." Greenhouse, 544 F.2d at 1303. The defendants included the parish church, which held title to a "substantially all-white parochial school" in Marksville, Louisiana, the bishop of the diocese, and several federal agencies. Id. In two interlocutory orders, the district court limited the plaintiff class to residents of Marksville and dismissed the claims against the bishop, but the orders were not reduced to judgment. Id. After the court made these rulings, the Marksville parish schools were desegregated. At this point, the plaintiffs asked the court to dismiss the case as moot, and, as the defendants had no objection, the court dismissed it as moot. Id. at 1303–04. The plaintiffs then

---

see how the fact that an interlocutory order effectively disposed of a claim could make a difference under the rationale set forth in Druhan. In this case, the court is still faced with, in the form of the appeal, a final order dismissing Fitel's case, which was requested by Fitel, and in substance, an appeal from an interlocutory order which we lack statutory jurisdiction to hear.

68

appealed the dismissal for the purpose of obtaining appellate review of the two interlocutory orders the court had entered, which had limited the class and dismissed the claims against the bishop. Id. at 1304. The defendants promptly moved the court of appeals to dismiss the appeal on the ground that the district court's dismissal of the case as moot constituted a consent judgment and, as such, was not appealable. Id.

The court of appeals agreed that the claims against the Marksville parish church were moot, but held that the district court's order dismissing the case had not terminated the litigation. Id. Rather, the litigation was still ongoing because the district court had not reduced to final judgment its interlocutory order dismissing the plaintiffs' claims against the bishop; moreover, the plaintiffs' claims against the federal agencies were still pending. Id. In the panel's words, the case against the federal agencies "w[as] dormant but for want of a final order, not for mootness." Id. The court therefore vacated the district court's order dismissing the case as moot for want of an appealable final judgment under section 1291.[39] Id.

---

[39] In doing so, the court instructed the district court to either enter a final judgment as to all parties or a partial final judgment pursuant to federal rule of civil procedure 54(b). Greenhouse, 544 F.2d at 1305.

It is obvious that, in arriving at this disposition, the court was not required to answer the question of whether the plaintiffs could have maintained an appeal and obtained review of the two interlocutory orders, had they, like Fitel, first obtained the dismissal of all of their claims with prejudice. According to Fitel, the court nonetheless answered this question, presumably as an alternative holding. Fitel bases its argument on language appearing in the court's opinion antecedent to the statement that the appeal was being dismissed for want of a judgment. The language Fitel cites relates to the fact that the district court dismissed the case as moot in response to a letter-motion the plaintiffs had sent to the court, see id. at 1303–04, and explores whether this precluded the plaintiffs from appealing the two interlocutory orders the court had previously entered. The court stated,

> The doctrine that one may not appeal from a consent judgment does not apply to the situation before us. "By consenting to the judgment that is entered, a party waives his right to appeal from it. He may, however, urge on appeal that his consent was not actually given." 9 Moore Federal Practice P 203.06. It is obvious that plaintiffs did not intend by their letter-motion to consent to a judgment that would preclude them from the appellate review the desire for which triggered their request that a judgment be entered. Nor could the trial court have entertained such an intent. It was aware that plaintiffs were seeking to review the two orders that had narrowed the case. It would be inconsistent with the court's obligation under F[ed]. R. Civ. P. 23 for the court to terminate the case by a non-appealable judgment that would dispose of the claims for diocesan-wide relief, raised by non-Marksville plaintiffs and on behalf of a diocesan-wide class.

70

Id. at 1305.  Drawing on part of this language, Fitel's brief in opposition to EBG's

motion to dismiss the appeal asserts that

> Even where an appellant has affirmatively requested dismissal (which
> is not the case here), binding authority of this Circuit has held that
> dismissal of the appeal is improper where "[i]t is obvious that
> plaintiffs did not intend by their letter-motion to consent to a
> judgment that would preclude them from the appellate review the
> desire for which triggered their request that a judgment be entered."
> Greenhouse v. Greco, 544 F.2d 1302, 1305 (11th Cir. 1974); see also
> Dorse v. Armstrong World Indus., Inc. 798 F.2d 1372 (11th Cir.
> 1986) (refusing to dismiss appeal despite fact that appellant had
> entered into a stipulation of judgment).[40]  Similarly, it was obvious
> to the [district c]ourt and counsel for EBG that [Fitel] clearly and
> consistently objected to the district court's preclusion of expert
> testimony and that [Fitel] never consented, or intended to consent to a
> judgment that would preclude [Fitel] from appellate review.

The Greenhouse language the brief quotes provides Fitel no support for two

reasons.  First, the language is pure dicta; it deals with a hypothetical scenario.  It

assumes that the district court had entered a judgment that was final as to all issues

and parties and thus appealable under section 1291; that the plaintiffs had

appealed the judgment; that the defendants had moved to dismiss the appeal on the

ground that the plaintiffs had "consented" to the judgment;[41] that the plaintiffs had

---

[40] We distinguished Dorse v. Armstrong World Indus., Inc., 798 F.2d 1372 (11th Cir.
1986), in Druhan.  Durhan, 166 F.3d at 1325 n.4.

[41] The Greenhouse panel acknowledged the doctrine that one "may not appeal from a consent
judgment.  'By consenting to the judgment that is entered, a party waives his right to appeal from
it.'"  Greenhouse, 544 F.2d at 1305 (emphasis added).

responded to the motion by stating that their "consent was not actually given"; and that it was obvious that the trial court, in discharging its responsibilities under Rule 23, could not have entertained the notion that the plaintiffs were consenting to the dismissal of their case. The dicta ends with this implication: if faced with this scenario, the panel would have found that the plaintiffs had not consented to the dismissal.

Second, Greenhouse has no bearing on our "case or controversy" holdings in Druhan and Woodard. Since the Greenhouse panel was not presented with a final judgment it was not necessary for the panel to reach the issue of standing, and thus it did not do so explicitly. If it reached the issue, it did so sub silentio. In this circuit, a panel's sub silentio jurisdictional finding in one case does not constitute binding precedent, as "it is well-established circuit law that we are not bound by a prior decision's sub silentio treatment of a jurisdictional question." Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1231 (11th Cir. 2007)(quotation omitted).

Accordingly, I believe that our precedent in Druhan and Woodard effectively ends the day for Fitel's appeal. Fitel should not be permitted to receive immediate, automatic appellate review by seeking a dismissal with prejudice.

72

Instead, Fitel should have used the statutory mechanism in place, section 1292(b), if it wanted to receive appellate review. It is to this point that I now turn.

III.

When all is said and done, it is obvious that an interlocutory order that effectively forecloses the plaintiff's case is appealable under section 1292(b). Section 1292(b) provides for the appeal of an interlocutory order if the district court certifies that it "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). An interlocutory order that effectively terminates the plaintiff's case—like the order Fitel is attempting to appeal—obviously meets this definition. Congress, in enacting section 1292(b) in 1958, could have authorized the appeal of such an order without the district court's certification (and the court of appeals's acceptance of the appeal), provided that the appellant demonstrated to the court of appeals that the order effectively, and adversely, disposed of its case, but Congress chose not to go that route.

Instead, Congress required that the district judge determine the dispositive effect of the order it has entered. This makes perfect sense. The district judge is in the best position to assess the situation at hand—in particular, the efficiency and cost effectiveness of authorizing the interlocutory appeal to go forward.[42] In

_____

[42] The role of the district court in screening interlocutory appeals is emphasized in the legislative history of section 1292(b). We recounted this history in <u>McFarlin v. Conesco Services.</u>, 381 F.3d

73

1251, 1257 (11th Cir. 2004), stating

> The addition of [section] 1292(b) was prompted by a proposal to Congress from
> the Judicial Conference of the United States Courts.  The specifics of that
> proposal originated from a committee of judges appointed by the Chief Justice to
> study the matter of interlocutory appeals.  The committee's report was approved
> by the Judicial Conference and transmitted to Congress, where it was reproduced
> in the reports of the House and Senate Judiciary Committees when they acted
> favorably on the legislation.  The report of the Judicial Conference committee is
> particularly persuasive in regard to the intent behind the provision, because
> Congress enacted the report's proposed language verbatim.

Id. (citations omitted).

The report from the Judicial Conference committee was attached to the report issued by
the Senate Committee on the Judiciary and states

> The right of appeal given by the amendatory statute is limited both by the
> requirement of the certificate of the trial judge, who is familiar with the litigation
> and will not be disposed to countenance dilatory tactics, and by the resting of final
> discretion in the matter in the court of appeals, which will not permit its docket to
> be crowded with piecemeal or minor litigation.

S. Rep. No. 85-2434 (1958), reprinted in 1958 U.S.C.C.A.N. 5255.  The Senate Report itself
states

> [W]hile it may be desirable to permit appeals from any interlocutory order in
> certain instances, the indiscriminate use of such authority may result in delay
> rather than expedition of cases in the district courts.  Obviously, such appeals
> should not be allowed if they are filed solely for the purpose of delay or are based
> on spurious grounds.  In order to eliminate such appeals the bill is cast in such a
> way that the appeal is discretionary rather than a matter of right.  It is discretionary
> in the first instance with the district judge . . . .

Id. at 5256-5257.  The Senate Report also included a report from a committee appointed by the
Chief Judge of the Tenth Circuit, which addressed the procedure by which interlocutory appeals
should be taken.  Id. at 5258.  The committee recommended an interlocutory appeals procedure
similar to that eventually adopted by Congress in § 1292(b).  The Senate Committee apparently
thought the Tenth Circuit committee's report to be instructive and therefore included it in its
report.  The Tenth Circuit committee's report states

> [it is necessary] to provide a procedural screen through which only the desired
> cases may pass. . . . We believe that the certificate of the trial judge is essential

74

certifying the order, and carefully circumscribing and plainly stating the issue, the

judge is telling the court of appeals that entertaining the appeal will enhance

efficiency and cost-effectiveness in reaching a final judgment in the case.[43]  The

court of appeals, as a total stranger to the case, is ill-suited to undertake this task in

the first instance.   Adopting a policy of entertaining interlocutory appeals that

---

> both to recognition of the appropriate case [for hearing an interlocutory appeal]
> and to rejection of applications calculated merely to delay the judgment.  Only the
> trial court can be fully informed of the nature of the case and the peculiarities
> which make it appropriate to interlocutory review at the time desirability of the
> appeal must be determined; and he is probably the only person able to forecast the
> further course of the litigation with any degree of accuracy.  Immediate
> availability of counsel for informal conference should prove a great advantage to
> the trial judge in isolating the extraordinary case in which valuable savings could
> be expected to follow an immediate review.  Requirement that the trial court
> certify the case as appropriate for appeal serves the double purpose of providing
> the appellate court with the best informed opinion that immediate review is of
> value, and at once protects appellate dockets against a flood of petitions in
> inappropriate cases.

Id. at 5262.

[43] This case provides an excellent example of how following the procedure established by section 1292(b) enhances judicial efficiency and thus reduces transaction costs.  In evaluating whether to authorize a section 1292(b) appeal, the district court must consider if "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Consequently, had Fitel requested a section 1292(b) certification of the order striking its expert, it is a safe assumption that the district court would have finished the hearing that it was already conducting and would have considered EBG's remaining motions for sanctions, since EBG's fifth motion, which sought the dismissal of Fitel's entire complaint with prejudice, might have terminated the litigation, thus obviating any need for an interlocutory appeal.  Had the court heard the remaining motions and, as seems likely given the tenor of the December 15, 2006 hearing, dismissed Fitel's complaint, Fitel would have appealed, and, it may have turned out that a ruling on the interlocutory order Fitel now presents would have been unnecessary.  As the case stands now, the district court, again given the tenor of the December 15 hearing, may dismiss Fitel's complaint after hearing EBG's remaining motions, in which event, this case will come before us once again.

could be certified under section 1292(b), but are not, may encourage some lawyers to dismiss a claim that might succeed notwithstanding the adverse interlocutory ruling. By traveling the section 1292(b) route rather than the route Fitel has taken, a lawyer can avoid the risk of dismissing such a claim, and thereby encountering a malpractice suit.[44] If unsuccessful on appeal, counsel will have the opportunity to revisit the client's case before deciding whether to call it a day. If it appears that, in light of the unsuccessful appeal, the case lacks merit, counsel simply informs the court—perhaps on summary judgment, a rule 12(b)(6) determination setting, or under rule 41(a) or (b)—that the plaintiff cannot establish its claim.

The majority objects to this approach by noting that section 1292(b) certification was by no means "guaranteed" ("there is no basis for the dissent's bold prediction that a section 1292(b) request likely would have been granted") and that Fitel could have been denied appellate review if the district judge failed to certify the order. Indeed, that is possible. However, a denial of certification would suggest that the district judge, who is in the best position to see the entire landscape of the unfolding case, did not believe either that his order involved a "controlling question of law as to which there is substantial ground for difference

---

[44] Where a court of appeals has reviewed an interlocutory order in an appeal taken from a judgment of dismissal entered solely at the plaintiff's request, one must ask whether the court of appeals, in sidestepping section 1292(b)'s limitation, took the appeal because plaintiff's counsel may have committed malpractice in failing to seek a section 1292(b) certification.

of opinion" or that appellate review would not "materially advance the ultimate termination of the litigation." In either case, the decision of whether immediate appellate review is appropriate is best made by a district court judge, not the individual litigants.

Additionally, the majority rejects my reasoning by arguing that the section 1292(b) route "foists upon litigants and counsel an untenable position" where the "attorney dare not candidly tell the court that its ruling is case-dispositive." I fail to see how requesting section 1292(b) certification of an interlocutory order places an attorney in a vexing ethical dilemma. Indeed, by requesting section 1292(b) certification, an attorney is candidly informing the court that the order at hand will "materially advance the ultimate termination of the litigation." There is no ethical dilemma that an attorney faces if the attorney candidly informs the court about his client's positions and diligently pursues his client's goals through the statutory framework.

It is for these reasons that I respectfully DISSENT.